## Allen v. Rieder, Appellant.

*Husband and wife—Liability for necessaries—Provision for wife.*

1. Where a husband has separated from his wife and has started proceedings for a divorce, but in the meantime pays over to her for her maintenance one-half of his income of $6,000 to $7,000, and advertises that he will not be liable for her debts, a furrier with whom the husband and wife had no prior dealings cannot charge the husband for a bill of $225 worth of furs purchased by the wife and delivered to her after the separation.

2. The obligation of the husband for necessaries supplied to the wife during coverture arises from the law regarding her as his agent for that purpose; and hence his assent is implied to all contracts of this kind, made through her during cohabitation. If the husband has separated from his wife and has made ample provision for her, the law will presume that the agency has ceased, and whoever deals with the wife does so at his peril.

Argued Oct. 5, 1910.    Appeal, No. 246, Oct. T., 1909, by

defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1907, No. 508, on verdict for plaintiff in case of George W. Allen v. Joseph Rieder. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit to recover the price of a Persian lamb coat. Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows:

In this case, the defendant's position and circumstances of life, his income, and so forth, have been shown to you. It was testified before you that Mr. Rieder had never had an account at the plaintiff's store. It was also testified that no inquiry was made from Mr. Rieder as to whether the ordering of this coat was correct, and whether he would be responsible for it.

[If you find that this coat was reasonably necessary for Mrs. Rieder, and that it was sold on the credit of her husband, you might render a verdict in favor of the plaintiff.] [4] If, on the other hand, you should find from the testimony that the plaintiff had notice that the defendant would not be responsible for his wife's debts, and, notwithstanding that, the plaintiff delivered the goods to the wife, then, Mr. Rieder could not be held liable.

Mr. Rieder testified that he was in the habit of paying a certain amount to his wife, and that she came to his office and got the money from the bookkeeper. He testified that on one occasion the bookkeeper told him that his wife had informed him, the bookkeeper, of the purchase of this coat. Mr. Rieder then said that he called up the plaintiff's place of business and spoke to a young lady there, who said she would call the manager to the telephone; that a man came to the 'phone who said that he was the manager, and that he informed this man that he would not be responsible for the bill for the coat, and that if the plaintiff chose to deliver the coat to his wife, they must look to her for payment.

Mr. Rieder produced a copy of "The North American" newspaper, published December 14, 1906, and read therefrom

a notice that he would not be responsible for articles sold to his wife. [It was not shown that this notice was brought to the attention of the plaintiff, but Mr. Rieder said that the notice, as he recollected, was inserted in the newspaper after he had the conversation with Mr. Allen's manager, and that then the coat had not been delivered. I think the young lady said that it was not delivered until December 24. If you find that the plaintiff received notice from Mr. Rieder that he would not be responsible for the price of the coat, and received that notice before the coat was delivered, then you should render a verdict for the defendant.] [3] In order to render a verdict for the plaintiff, you must find that this coat was reasonably necessary for Mrs. Rieder in the station of life in which she and her husband were. If you find that, you could render a verdict for the plaintiff, unless you find that the plaintiff had notice from Mr. Rieder that he would not be responsible for his wife's debts.

Verdict and judgment for plaintiff for $249.50. Defendant appealed.

*Errors assigned* among others were (3, 4) above instructions, quoting them.

*S. Morris Waln*, for appellant.—The instructions were erroneous: Cany v. Patton, 2 Ash. 140; Com. v. Richards, 131 Pa. 209; Alley v. Winn, 134 Mass. 77; Cunningham v. Irwin, 7 S. & R. 247; Breinig v. Meitzler, 23 Pa. 159; Spencer v. Tisue, Add. 316; Walker v. Simpson, 7 W. & S. 83; Graves v. Cole, 19 Pa. 171.

The rule is, that where a husband and wife parted by mutual consent and such a suitable allowance is furnished the wife, the husband is not bound to pay any bills which she may have contracted as his agent. It is enough that the separation be a matter of common reputation where he resides. But to this allowance two things are requisite: First, that it shall be really sufficient for the wife; second, that it shall be regularly paid. If either requirement be wanting, a fact which the seller must ascertain at his peril, the wife is not confined to her remedy

under the deed of separation, if any, but may pledge her husband's credit: Calkins v. Long, 22 Barb. 97; Kemp v. Downham, 5 Harrington (Del.), 417; Barker v. Barney, 8 Johns. 72.

Where the wife lives separate and apart from her husband, the vendor is put upon inquiry. Under such circumstances the implied agency of the wife to bind her husband for necessaries is revoked: Cany v. Patton, 2 Ash. 140; Spencer v. Tisue, Add. 316; Walker v. Simpson, 7 W. & S. 83; Breinig v. Meitzler, 23 Pa. 159; Cunningham v. Irwin, 7 S. & R. 247; Husbands on Married Women, pp. 43–45.

The notice published by defendant, December 14, 1906, in the public newspaper of the county, which was ten days before the plaintiff delivered the goods to the defendant's wife, is sufficient: N. Y. Nat. Exchange Bank v. Crowell, 177 Pa. 313.

No notice was necessary: Cany v. Patton, 2 Ash. 140.

*G. C. Ladner,* of *Ladner & Ladner,* for appellee.—Where a husband leaves or abandons his wife without cause, she is entitled to pledge his credit and bind him for such necessaries as she may require, notwithstanding he publishes or gives notice to tradesmen that he will not be responsible for her debts. Giving his wife an allowance will protect him only if the jury finds the allowance is adequate and sufficient for her needs: Husbands on Married Women, sec. 40, p. 44; McGrath v. Donnelly, 131 Pa. 549; Hodgkinson v. Fletcher, 4 Camp. N. P. 70; Schouler on Domestic Relations, sec. 66, p. 103; Harris v. Morris, 4 Esp. 41; Pierpont v. Wilson, 49 Conn. 450; Watkins v. De Armond, 89 Ind. 553; Llewellyn v. Levy, 163 Pa. 647.

OPINION BY HEAD J., March 3, 1910:

The plaintiff in this action seeks to recover the sum of $225, the price of a fur garment which he made on the order of the wife of the defendant, given in December, 1906. The coat was delivered to her apartment at the Hotel Lorraine in the city of Philadelphia on or about December 24 of that year. The evidence adduced at the trial, which was brief and practically uncontradicted except as to one point, disclosed the following state of facts:

Some nine months prior to the transaction the defendant

538        ALLEN *v.* RIEDER, Appellant.

and his wife separated and since that time had lived separate and apart. At the time of the separation the family of the defendant consisted of himself, his wife and a daughter. The defendant, who was a pawnbroker, was possessed of an annual income of from $6,000 to $7,000. The evidence does not disclose the causes out of which the separation arose, but it does show that they were of such character that the husband filed a libel in divorce which was pending and awaiting trial at the time of the transaction referred to. At the time of the separation he provided for the maintenance and support of his wife and daughter. He paid regularly $75.00 per month for a suitable apartment for her at the hotel already mentioned. He allowed and regularly paid to her in cash $41.50 per week to enable her to maintain herself. He made a further cash allowance of $10.00 per week for the daughter, and in addition thereto paid such bills as she, the daughter, contracted for her clothing, etc. It will thus be seen that the defendant was turning over to his wife after their separation substantially the full one-half of his income for her support and maintenance. There was never any claim advanced by her that the provision thus made for her was inadequate in proportion to the means of her husband. She filed no libel for divorce. She asked for no alimony pendente lite, and appears to have been satisfied that the provision voluntarily made for her by her husband was fully equal to any demand she could have legally enforced against him.

There had never been any prior dealings between the plaintiff and the defendant or his wife. Whilst there is some dispute in the evidence as to the assertion of the defendant that he telephoned to the manager of the plaintiff's store a notice that he would not be responsible for the payment of the garment ordered, and that such notice was within a day or two after the order was given, there is no dispute that as early as December 14, ten days or more before the coat was delivered, he caused to be published in the Philadelphia "North American" a notice to all persons warning them to sell no goods to his wife on his credit.

With the testimony in this condition, the learned counsel for the defendant presented a point for binding instructions which was refused, and the case was submitted to the jury, resulting in a verdict for the plaintiff. The court thereafter refused a motion for judgment n. o. v. and entered judgment for the plaintiff on the verdict.

The reason on which the law rests the liability of a husband to pay even for necessaries furnished to his wife on her own order was clearly stated as early as Cany v. Patton, 2 Ashmead, 140, by Judge KING in the following language:

"It is a mistaken notion to suppose, that a married woman has, from the marital relation, the right to make contracts, even for necessaries, which shall be binding on her husband. The obligation of the husband for necessaries supplied her during coverture, arises from the law regarding her as his agent for that purpose; and hence his assent is implied to all contracts of this kind, made through her during cohabitation: Clancy on Married Women, 23; 1 Salk. 113. But, when circumstances exist, which render such assent irreconcilable with truth or reason, the law will not infer it. Such cases are presented, . . . . where, as here, they (necessaries) are furnished after a mutual agreement to live separate, in which an adequate allowance is stipulated to be paid, and actually is paid to the wife by the husband, for her future comfort and support. To infer, under such a state of facts, his assent to her purchases, would be a presumption strained against every just deduction of truth."

This case has been cited with approval in almost every decision on the subject that has been rendered since that early day.

In Walker v. Simpson, 7 W. & S. 83, Mr. Justice KENNEDY, speaking for the court, uses this language:

"All persons supplying either food, lodging or raiment to a married woman living separate from her husband are bound to make inquiries, and they give credit at their peril: 2 Kent's Com. 146, and the cases there referred to."

In Com. v. Richards, 131 Pa. 209, Mr. Justice CLARK says: "If a proper provision has been made for a wife, her hus-

band is not liable even for necessaries furnished for her support: Cany v. Patton, 2 Ashmead, 140; Alley v. Winn, 134 Mass. 77."

In speaking of the liability of a husband for the support of his wife, or necessaries furnished to her, living separately, it is said in Endlich & Richards on the Rights of Married Women, sec. 81:

"If a proper provision is made for the wife, the husband is not liable."

As already stated, there is no dispute about the fact that at the time the wife of the defendant gave the order to the plaintiff she was living separate and apart from her husband, and that she had been receiving, during the entire period of that separation, without objection or complaint, what must be admitted to have been an adequate provision for her support. Under such circumstances her agency ceased when the family relation was broken up and the parties began to live separately, and this leaves the plaintiff in the position of seeking to bind an alleged principal for the undertaking of another when in fact no relation of principal and agent existed at the time.

Even if we regard the verdict of the jury as having established that the plaintiff had no actual notice that the wife was living separate and that her husband disclaimed responsibility for her purchases, his situation is not thereby improved. As we have already seen, the public records of the courts disclosed the fact that the defendant was seeking a divorce. He had caused to be published in the public press of the city a warning to all tradesmen that his wife was not to be regarded as his agent for the purpose of purchasing goods on his credit. If he were required to give actual personal notice to each person with whom his wife might undertake to deal, the long-established principle of law already referred to would afford him no protection whatever. The law casts some duty on the dealer who undertakes to sell goods to one person on the credit of another. He must know that such a relation still continues to exist between the woman who buys and the man whom she seeks to charge with her

purchases as would make the latter legally responsible for her acts. If, in point of fact, no such relation exists, the dealer must look to the alleged agent to whom he sold, and cannot charge the supposed principal.

In treating this phase of the case, Judge KING, in the opinion cited, holding that no such notice in fact to a tradesman was necessary to exonerate the husband, says:

"In Chitty on Contracts, 47, the decisions on this point are correctly summed up thus: 'In such cases, the presumed authority of the wife arising from cohabitation, does not exist; and it is incumbent on a tradesman to make inquiries, and if he trusts the wife, he does so at his peril; for no notice to him, that the wife has a separate maintenance, is necessary, unless he has trusted her before, and was not aware of the separation.'"

After discussing the English cases on the subject, the learned jurist thus concludes:

"The implied agency created by law, from the marital relation between husband and wife, and the moral obligation of the husband to furnish her necessaries, under such circumstances, terminates; and, when was it supposed, that after an agency has terminated, the principal is liable for acts of the agent, to all the world except to those to whom he can trace notice of such termination?"

The application of these principles of the law to the undisputed facts disclosed by the record before us seem to us to necessarily lead to the conclusion that the plaintiff's case failed. The learned trial court therefore should have affirmed the point of the defendant for binding instructions, or, failing in that, should have granted the motion for judgment notwithstanding the verdict.

Judgment reversed, and judgment is now entered in favor of the defendant notwithstanding the verdict. The costs of this appeal to be paid by the appellee.