SALEM COMMON PLEAS COURT.

ALBERT E. HODGSON ET AL., PLAINTIFFS, v. STUART HARRIS AND HANNAH HARRIS, DEFENDANTS.

For the rule, *Herbert C. Bartlett.*

*Contra, Thomas G. Tuso.*

WARE, J. But a single question is involved in this controversy, and that is the liability of the defendant Hannah Harris for goods and merchandise supplied by the plaintiffs, on some occasions to the defendant Stuart Harris, and at other times to herself, the whole of which being used in and about the home of the defendant Hannah Harris, the said parties' defendant, being husband and wife. These parties cohabited together as man and wife during the greater part of the period of time covered by the items of the account, the remaining period of the time in question as distinguishable from the rest because of the fact these parties lived separate and apart, the husband having deserted the wife. He gave no notice to the world in general or to the plaintiffs in particular of this fact, neither did he cause notice to be given that he would not be liable for any debts not contracted by him in person. No defense being interposed by the defendant Stuart Harris judgment by default was entered for the full amount of the claim against him. In the present suit a judg-

ment for a like amount and for the same items that formed
the demand against the husband, has been entered following
the verdict of the jury entered against the wife. The books
of account on which the suit was predicated, have been ex-
amined by me, but throw but little light on this controversy.
They are kept very poorly, but no worse than might be ex-
pected of the village merchant on the small scale, who looks
not on his books as instruments of proof so much as a mem-
oranda of an account on the basis of which his trade will on
pay day make settlement. Measured by the rule laid down in
the famous case of *Coggs* v. *Bernard,* reported by Lord Ray-
mond, hardly any of the books of the village storekeeper,
strictly speaking, have a place in the body of the evidence,
but as human documents which the discretion of the court
has allowed to go in evidence. These books are no exception.
They are kept mostly in lead pencil writing, there is evidence
of mistakes and erasures, and the persons charged thereby,
"Mr. and Mrs. Harris" or "Stuart Harris and Wife," as evi-
dence, is of doubtful value. It does not require a very vivid
imagination in looking at these books, to believe that the
names of the persons to be charged, were inserted or changed
as an afterthought, possibly when the worldly possession of
these parties had been changed around. In this regard the
chirography and general appearance of the entries are of in-
terest. There are several items for money loaned, the very last
item of the account being a charge of nine dollars for money
supplied to the defendant, Hannah Harris, with which to
procure automobile tags. Items of this nature cannot be a
part or form any basis of a book of accounts. In the absence
of a statute expressly provided otherwise, the rule is very
generally laid down that a party cannot prove by his own
books of account, by an entry therein, the fact that he has
paid out money, made in the regular course of business, of
a loan to a party, or paid out money for his benefit. *Inslee* v.
*Prall,* 23 *N. J. L.* 457; *Oberg* v. *Breen,* 50 *Id.* 145; *Hauser*
v. *Leviness,* 62 *Id.* 518. Books of account had their origin
at a very early period in the necessity of things; but they are
in derogation of one of the leading principals, to wit, that a

party shall not be permitted to make evidence for himself. If they were proved to be books of original entry used by the party in the regular course of business, in which he made his daily entries of charge against all his customers, if they appeared to be fair on the face, and not open to suspicion for correctness, they were allowed to go to the jury as *prima facie* evidence of the truth of the charges they contain. But books of account cannot be received in evidence in New Jersey to prove the payment of money. Nor are they evidence of money lent. The necessity of admitting them as evidence of goods sold, services rendered, and other matters in the usual course of business, for which the common rule has been relaxed, does not exist in case of payments or advance of money. *Inslee* v. *Prall, supra,* and therefore such items as money lent or paid on account to someone "is not legally evidential in the plaintiff's behalf." *Hauser* v. *Leviness, supra.*

That it is the duty of the husband as an incident of the marriage state, to support and maintain his wife and family, and in connection therewith to furnish the necessaries of life for the home, cannot be denied. And by reason thereof, and as an incident of that relation, the right of the wife to pledge the husband's credit for the same when unsupplied by him, is generally deemed to be founded upon the doctrine of implied agency. The agency of the wife is sometimes designated as the agency of necessity. Accurately speaking, however, the authority of the wife to purchase necessaries on her husband's credit, as well as the liability of the husband therefor, need not be based on any theory or agency, express or implied. It results from the duty to furnish necessaries imposed upon the husband by law, as an incident of the marriage state or relation, and his failure or refusal to perform the duty. 30 *Cyc.* 591; *Allen* v. *Reider,* 41 *Pa. Super.* 534; *Benjamin* v. *Dockman,* 134 *Mass.* 418; *Cunningham* v. *Reardon,* 98 *Id.* 538; *Anthony* v. *Phillips,* 17 *R. I.* 188; 20 *Atl. Rep.* 933.

There are charges in these books of account which read as if they were items of indebtedness created jointly by both defendants and therefore entered as a joint charge. If these defendants were not parties in any of the domestic relations

recognized by law, such items of indebtedness against both defendants might be correct, but when it is borne in mind that they were husband and wife, and the items of indebtedness were purchased for the home established by the husband, it becomes impossible of realization as a legal proposition that husband and wife can become jointly liable for the same necessaries of life supplied to the home, as each might individually be. I cannot conceive of an original undertaking in the purchase of necessaries for the home where both the husband and wife become joint debtors at the inception of the contract. Where, however, the husband is not living with his wife, it is possible that the wife may become the debtor as an original undertaking by entering into an express contract with the creditor at the time credit is extended independent of her deserting husband, but such fact must derive its force and existence from evidence outside of such books of account as are produced. In matters of this kind the books are of no value except as a memoranda of items furnished by plaintiff. It is contended, however, that the wife is liable for a certain class of items by binding herself to pay the same at a time subsequent to the time the same was contracted by the husband. In this connection it is argued that the act of April 9th, 1929 (*Pamph. L.* 1929, *p.* 110), removing the disabilities of married women, inasmuch as it removes the former inhibition in the then law to the effect that she shall not "be liable on any promise to pay the debt or answer for the default of any other person" has created a debt against this defendant on her promise to pay for what had been contracted by the husband with the plaintiffs. I do not think so. The statute of 1929 cannot lean back and include matters happening before its enactment as statutes can affect only acts and matters in future. Moreover, a reasonable construction of the 1929 statute must presuppose that it can have application only where the promise or undertaking is in writing. Otherwise to give it the construction argued by plaintiff would be to view it as impliedly repealing that portion of section 5 of the statute of frauds and perjuries expressly providing that to charge a defendant upon any special promise to

answer for the debt, default or miscarriage of another person, the defendant's liability must be based upon some agreement, note or memorandum, in writing, and signed by him, *i. e.,* the party sought to be charged. This is a very ancient statute. It is in fact the inclusion in our statute law of a similar statute first passed by parliament in the age of the Second Charles, and despite the many innovations and progress of this age, it is likely to remain as part of our statute law.

As the result of the verdict of the jury, the present situation is strange indeed. There is now two judgments of record against different individuals but based on the same cause of action, and one can only conjecture the result in some future day should there be assignments of these judgments to third persons. Such a situation if left unchanged at its inception might necessitate the intervention of an equity court to prevent the collection of the same account twice. But obviously the jury in passing upon this matter failed to consider these matters and merely viewed the matter from the standpoint of the creditor who had been unpaid for the goods furnished by him. It is clear that the result attained was not brought about by a fair preponderance of the evidence, and should not stand. Looking at the books of account as well as the testimony taken, it is impossible for the court to separate what may as a determined question of fact, be legally claimed to be owing by the wife to the plaintiffs, separate and apart from such items of indebtedness that were contracted by the husband or furnished for his home during his physical presence there, whereby the judicial question of the acceptance by the plaintiffs of a lesser amount of damages than the assessment by the jury, might be tendered as the condition precedent for the entry of judgment final as the alternative of the grant of a new trial. This being impossible, the court has no other option than to award a new trial.

The rule to show cause is made absolute.