Commonwealth ex rel. Ross *v.* Ross, Appellant.

430

Argued June 18, 1965.  Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, FLOOD, JACOBS, and HOFFMAN, JJ.

*Lewis A. Walder*, for appellant.

*Harry C. Liebman,* for appellee.

OPINION BY HOFFMAN, J., September 16, 1965:

This is an appeal from an order of the County Court of Philadelphia entered against appellant for the support of his wife in the amount of $25 a week.

Appellant first contends that his wife withdrew from the marital domicile without legal cause and, therefore, is not entitled to support. To receive support payments, a wife need not establish facts which would entitle her to a divorce; it is sufficient to justify living apart if she shows any adequate reason in law. *Commonwealth ex rel. Darges v. Darges,* 202 Pa. Superior Ct. 330, 332, 195 A. 2d 847, 848 (1963); *Commonwealth ex rel. Brown v. Brown,* 195 Pa. Superior Ct. 324, 326-327, 171 A. 2d 833, 834 (1961). After reviewing the record, we find no reason to disturb the determination by the court below that the wife had sufficient legal cause to withdraw from the marital domicile.[1]

The principal issue is whether the amount of the order was unreasonable and excessive. The husband is a retired radio technician, sixty-five years old, who receives Social Security payments in the amount of $102.70 a month, or $23.70 a week. The wife, who is sixty-eight years old, receives Social Security benefits in the amount of $51.10 a month, or $11.79 a week.

In addition to his Social Security benefits, the husband admitted that at the time of the separation, he had $17,500 in personal bank accounts. He testified, however, that three days after his wife left him, he gave all of these funds to his daughter, because she had once

---

[1] Her testimony indicated, among other things, that her husband would curse her and argue with her incessantly. If she would attempt to escape him by sleeping in their second bedroom, he would follow her, pull the pillows and blankets from her and try to drag her out of bed.

cared for him in the hospital. He also claimed that he had no control of or interest in the $17,500.

It is clear that the $25 support order of the lower court exceeds one-third of the husband's present income.[2] The lower court does correctly point out, however, that in fixing the amount of a support order, it is not restricted by the actual income of the husband, but may take into consideration his assets, earning capacity and other attendant circumstances.

In the instant case, the lower court determined that, ". . . the husband's *earning capacity* is greatly in excess of that reflected by his current net income. Until six or seven months prior to the separation the husband earned in excess of $100 per week. In the absence of any evidence to the contrary, the Court can infer that this is a proper measure of his earning capacity or power." The lower court then concluded: ". . . [A] husband cannot escape liability for the support of his wife merely by withdrawing from every income producing endeavor."

In our opinion, the lower court incorrectly looked to the husband's past earnings in determining his present earning capacity. We have often made clear that a support order should be reasonable, bearing in mind not only the husband's property and earning capacity, but also *the station in life of the parties*. See *Commonwealth ex rel. Kallen v. Kallen*, 200 Pa. Superior Ct. 507, 508-509, 190 A. 2d 175, 176 (1963). An order should not be based on the husband's earnings in the past, if it is unrealistic in light of his age or other circumstances. *Commonwealth ex rel. Barnes v. Barnes*, 140 Pa. Superior Ct. 397, 400-401, 14 A. 2d 164, 165

---

[2] The Commonwealth's policy has long been that an order for the support of a wife should not exceed one-third of the husband's earning capacity. *Commonwealth ex rel. Gutzeit v. Gutzeit*, 200 Pa. Superior Ct. 401, 408, 189 A. 2d 324, 327 (1963).

(1940); *Jones v. Jones,* 348 Pa. 411, 416, 35 A. 2d 270, 273 (1944).

In the instant case, the husband is sixty-five years old. He is retired and receiving Old Age Retirement Benefits from the Federal Government. No evidence was introduced at the hearing which would indicate that his retirement was unreasonable. Indeed, his decision to retire was in accord with our way of life today. The retirement status of an individual at age sixty-five is recognized by our Federal Government in its Social Security System. Many private businesses require the compulsory retirement of all personnel at this age, regardless of their position within the company.

Moreover, any inference by the lower court that the husband left his employment in bad faith with the intent to deprive his wife of support is unwarranted.[3] The record clearly indicates that he retired at least seven months prior to the separation. There is no reason to suspect, therefore, that his retirement was in any way related to the subsequent separation.

Retirement often reduces the income of the retired couple. Husbands and wives learn to adjust to their

---

[3] In support of this proposition, the lower court cited *Commonwealth v. Gleason,* 166 Pa. Superior Ct. 506, 72 A. 2d 595 (1950) and *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski,* 155 Pa. Superior Ct. 517, 38 A. 2d 347 (1944). The factual situations in those cases, however, are clearly distinguishable from the instant case.

In the *Gleason* case, almost immediately *after* the separation, the husband closed his grocery business and sold his entire stock of groceries.

In the *Wieczorkowski* case, the husband was *thirty-six years old* and a registered pharmacist during 1944, when employment for pharmacists was plentiful. Nevertheless, he continued to work in his mother's drug store without receiving wages, although he obviously had an earning capacity far in excess of the "board and keep" which he was receiving.

newly-limited means. In effect, they acquire a new station in life. Similarly, in this case, regardless of the husband's prior earnings, the wife could not reasonably have expected that his income would remain constant after he retired. In fact, this couple lived together for more than one-half year at their new and reduced standard of living. Now that the wife has left the marital domicile, though she did so justifiably, she cannot expect to be restored to her earlier station in life or to receive payments from her husband as if he were still employed. Whether such employment would be available to a man of his age is questionable at best. We cannot require, however, that a man of sixty-five forego his well-deserved retirement and seek employment anew for an indefinite period in the absence of unusual circumstances.

We similarly reject the lower court's conclusion that it may ignore the husband's present unemployment, ". . . particularly . . . when there is a question as to the husband's good faith . . . which is raised by the transfer of the Savings Accounts." In support of this proposition, the court relied on *Commonwealth ex rel. Sosigian v. Sosigian,* 202 Pa. Superior Ct. 188, 195 A. 2d 883 (1963). In that case, however, there was ample evidence to suggest that the husband, who was twenty-eight years old, was sufficiently able to obtain employment. We specifically noted in *Sosigian* at p. 191 that the husband's transfer of a savings account, and other actions, were ". . . indications of appellant's purpose to avoid his obligation of support. . . ."

The transfer of the savings accounts in this case may also indicate the husband's purpose to avoid his obligation. However, it should not reflect upon his reasonable decision to retire one-half year prior to the separation. Nor should it impel us to send him back to work. The function of a court in a proceeding for support, under §733 of The Penal Code of June 24,

1939, P. L. 872, as amended, 18 P.S. §4733, is not to punish a husband for his misconduct toward his wife but to fix an amount which is reasonable for her support and maintenance.[4] *Commonwealth ex rel. Trichon v. Trichon,* 189 Pa. Superior Ct. 395, 397, 150 A. 2d 176, 178 (1959).

We agree with the lower court, however, that the husband's actions in transferring the savings accounts are suspect. It is significant that the husband made no attempt to reward his daughter for her services until the parties had separated, and he had ascertained that his wife would not return. Cf. *Commonwealth v. Sgarlat,* 180 Pa. Superior Ct. 638, 121 A. 2d 883 (1956). Moreover, it is difficult to believe that the husband, who calculates his income at $23.70 a week and his expenses at $23.69 a week, actually relinquished all control and interest in his life savings of $17,500.[5] The lower court was not bound to accept the husband's testimony that he had no more interest in these funds. *Commonwealth ex rel. Hoffman v. Hoffman,* 184 Pa. Superior Ct. 500, 503, 135 A. 2d 822, 823-824 (1957).

In light of these factors, the lower court, in determining the amount of the support order, was entitled to consider not only the husband's actual income but also the interest from the $17,500 savings accounts. See *Commonwealth ex rel. Kallen v. Kallen,* 202 Pa. Superior Ct. 500, 502, 198 A. 2d 331, 333 (1964). It could not take into account, however, his earning capacity prior to retirement.

In summary, giving full consideration to appellant's retirement benefits and interest payments from his sav-

---

[4] Of course, such support orders are not final. Should the husband decide to seek reemployment, the support order may be increased.

[5] In fact, the expenses listed by the husband at the hearing indicated that his weekly expenses were $24.03 and *exceeded* his weekly income by approximately $.33.

426

ings accounts, there is nothing that would warrant an order based on an income in excess of approximately $1950 per year. Accordingly, an order of support for the wife should not exceed $12.50 per week.

The order of support for appellee will be modified.

The order of the court below is reduced to $12.50 per week, and the County Court of Philadelphia is directed to enter an order in conformity with this opinion.