Commonwealth ex rel. Burns v. Burns, Appellant.

Argued September 17, 1974. Before WATKINS, P. J., JACOBS, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ. (HOFFMAN, J., absent.)

*Garland D. Cherry,* with him *Kassab, Cherry and Archbold,* for appellant.

*Charles F. Mayer,* for appellee.

OPINION BY CERCONE, J., December 11, 1974:

This appeal arises from the entry of a support order in the lower court based upon the husband's pre-retirement income. The appeal contests the amount of the order and the basis upon which it was entered.

The parties were married in 1956, the wife's third and the husband's second marriage. They separated in 1968, and in accordance with a written separation agreement the husband paid his wife $160.00 per week, based upon the salary he was then receiving. He made these payments without fail for six consecutive years until he retired on January 31, 1974.

His explanation as to why he retired was as follows:
"Q. And, when is the last time that you received a full pay from Gimbels? A. January 31, 1974. I am not on their payroll after that date.

. . . .

"Q. Mr. Burns, this retirement from Gimbels, was that voluntary on your part? A. Oh, absolutely. Q. In other words, you could still be working there? A. I could still be working there, yes. Q. And, earning $45,000.00 a year or $50,000.00. A. I think so. Q. What was the amount you were paid in 1973? What was your gross income? A. 1973 was $58,000.00.

"Q. In your retirement could you tell us your specific reason for obtaining retirement? A. Yes. I asked the company two years ago to start thinking about replacing me for two reasons. One, I had the misfortune of having a thirty-two year-old son die of a brain tumor. And, I lost a lot of interest. And, right after that, I found that I had a diabetic condition, which has caused me to go on a very strict diet and has been rather costly and has taken a certain amount of pep out of me. And, they agreed after a year to look for somebody, and it took them six months. So, that is why it was only until recently that I was able to leave. I had to break in a new man."

Accepting this testimony of the husband as the essential part of his case the lower court entered an order for the wife in the sum of $123.00 a week. It should be noted that from January 31, 1974 (the last time the husband received a full pay from Gimbels) until June, 1974, the husband had a total income of $45.92 net per week. As of June, 1974, he received an additional $34.70 net per week increase and in February, 1975, he will receive a final increase of $112.38 net per week. To show the husband's weekly income and to compare that income to the weekly support order, the following chart might be helpful.

|  | Feb. 1974 thru May 1974 | June 1974 thru Jan. 1975 | Feb. 1975 and after |
|---|---|---|---|
| Husband's Income | $ 45.92 | $ 80.62 | $193.00 |
| Support Order | 123.00 | 123.00 | 123.00 |
| Husband's Income after payment of order | —86.08 | —42.38 | 70.00 |

At the close of evidence the following appears: "The Court: The Court enters an Order for the wife in the sum of $123.00 a week. Mr. Cherry: If the Court please, may I ask the Court on what basis you make the Order. Is it on the assumption that he was not entitled to retire, sir? The Court: I am not going to answer your question at all. I have taken everything into consideration, and I have come up with an Order which is proper and reasonable." From looking at the figures in the above chart, it is obvious that the court did not need to answer the question. In order to presently comply with the support order the husband would either have to borrow or deplete his assets. After February, 1975, when his income reaches $193.00 he will be able to retain only $70.00 per week after complying with the support order. There is no doubt that the court based

the support order on the assumption that the husband was not entitled to retire.

Therefore, the first question to be considered is whether or not a 61 year-old man, employed for 45 consecutive years previously, may retire even though the effect of such retirement is to reduce the amount of support he is able to pay his wife. If the evidence demonstrates that he retired solely to extinguish or reduce his earning for the purpose of avoiding support payments to his wife the lower court would then be justified in setting a support order based on his pre-retirement income. This principal is set forth in *Commonwealth ex rel. Haley v. Haley*, 199 Pa. Superior Ct. 235, 237 (1962) as follows: "In determining what a husband should pay for the support of his wife the court may consider the earning power of the husband and is not restricted to the amount of his actual earnings. Comm. ex rel. Litz v. Litz, 190 Pa. Superior Ct. 310, 154 A. 2d 420 (1959) ; Comm. v. Gleason, 66 Pa. Superior Ct. 506, 72 A. 2d 595 (1950)." But the rule is not as clear as the above cases would lead one to believe. The entire circumstances of his retirement must be examined to determine the extent of the husband's responsibility to support his estranged wife. The court in *Commonwealth ex rel. Ross v. Ross*, 206 Pa. Superior Ct. 429, 432 (1965) states: "An order should not be based on the husband's earnings in the past, if it is unrealistic in light of his age or other circumstances. Commonwealth ex rel. Barnes v. Barnes, 140 Pa. Superior Ct. 397, 400-401, 14 A. 2d 164, 165 (1940) ; Jones v. Jones, 348 Pa. 411, 416, 35 A. 2d 270, 273 (1944)." Therefore, in this case before basing the support order on the assumption that the husband was not entitled to retire, the circumstances surrounding the retirement must be considered.

Some light was shed on the surrounding circumstances in the testimony set forth above. The lower court had the opportunity to gain more information

concerning the retirement when the husband's counsel filed a petition with the lower court a week after the order was issued, asking for an opportunity to present medical witnesses to verify the husband's medical condition at the time of retirement. Medical reports were attached to the petition as exhibits, alleging that he had been suffering from duodenal ulcers, mild hypertension, recurring kidney stones (the last of which occurred in March, 1973) diabetes, a marked depression (occurring after his only son, age 32, died of a malignancy in October, 1971) obesity, hypertension, nephrolithiasis, prostatism, rectal polyps, diverticulosis, emphysema, and gastrointestinal problems. The lower court refused to grant a hearing to consider these medical problems and returned the petition stating: "I return to you herewith your petition for a re-hearing since I do not believe there is any valid reason to grant the same." If this medical evidence were proven it would certainly be the type of "circumstances" discussed in the *Ross* case, supra, which would determine if the husband's past earnings are a realistic basis for the support order. The lower court could have granted the petition either on the basis of case law, *Dellacasse v. Floyd,* 332 Pa. 218, 2 A. 2d 860 (1938), or statute, 12 P.S. §1032.

If there is evidence indicating that a man planned his retirement so as to retire at the age of 61, then we are of the strong opinion that even if he and his wife were living together there could be no complaint on the part of the wife that her income would be reduced. Certainly this being so, an estranged wife would have no greater claim on such a husband. Furthermore, if there is evidence that ill health was involved in the man's decision to retire then there is even a stronger case for disallowing an estranged wife's claim for support based on pre-retirement salary.

In this case a week after the order was fixed based on pre-retirement salary, the husband's counsel petitioned the lower court to present medical evidence concerning the husband's reasons for retirement, which the lower court refused. We are of the opinion that the court erred in not entertaining this medical evidence so as to be better able to judge this matter. We, too, would be in a much better position to decide in which of the above categories the husband falls if we were to have the benefit of the proffered medical evidence of the husband.

We therefore remand for a hearing regarding the medical evidence of the husband in this case as it relates to the reasons for retirement.

---

DISSENTING OPINION BY PRICE, J.:

I respectfully dissent from the majority opinion. The sole issue in this appeal is whether a 61 year-old man may retire from employment, even though the effect of the retirement would be to reduce the amount of support he is able to pay his wife. Unlike the majority, I would reverse the lower court, base the new support order on the husband's post-retirement income, and not remand the case for a hearing regarding the medical evidence of the husband as it relates to the reasons for retirement.

In the instant appeal, appellant-husband, 61 years old, retired after forty-five consecutive years of employment. Pursuant to a 1968 written separation agreement, appellant had been paying $160 per week for six years to the appellee-wife. Upon retirement, appellant stopped payments to appellee, who then filed a petition for support. The appellee contended that the appellant had retired in order to reduce his earnings and support payments, and to force the appellee into a divorce settlement. The lower court, after finding appellant's

reasons for quitting his job to be "insufficient and in-credible,"[1] entered an order for $123 per week based upon the appellant's pre-retirement income. The lower court also refused the appellant's request for an opportunity to call medical witnesses to support his testimony that ill health caused his retirement. Appellant appeals from the promulgation of this support order.

The majority finds that the lower court erred in not entertaining the medical evidence in order to ascertain whether the appellant retired because of medical reasons, and, therefore, would remand the case for a proper hearing. The results of this hearing would then be determinative of whether the appellant acted in bad faith in retiring and depriving appellee of the benefits of his employment compensation.

It is well settled that in determining what a husband reasonably should pay for the support of a wife, the court may consider the earning power of the husband and is not restricted to his actual earnings. *See, e.g., Drummond v. Drummond*, 414 Pa. 548, 200 A. 2d 887 (1964); *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa. Superior Ct. 247, 311 A. 2d 701 (1973). This is especially true where there is a question as to the husband's good faith. *Commonwealth ex rel. Sosigian v. Sosigian*, 202 Pa. Superior Ct. 188, 195 A. 2d 883 (1963). And a husband cannot escape liability for support merely by withdrawing from every income-producing endeavor. *See, e.g., Commonwealth v. Gleason*, 166 Pa. Superior Ct. 506, 72 A. 2d 595 (1950) (almost immediately after the separation, the husband closed his grocery business and sold his entire stock of

---

[1] Appellant testified that after informing his employer of his decision two years before actual retirement, he finally retired for two reasons: (1) loss of interest due to the death of a thirty-two year-old son of a brain tumor; (2) various medical problems. [NT 26]

groceries); *Commonwealth ex rel. Wieczorkowski v. Wieczorkowski*, 155 Pa. Superior Ct. 517, 38 A. 2d 347 (1944) (husband, an employable pharmacist, after separation, continued to work in his mother's drug store without receiving wages, although he obviously had an earning capacity far in excess of the "board and keep" which he was receiving). *See also, Commonwealth ex rel. Ross v. Ross*, 206 Pa. Superior Ct. 429, 213 A. 2d 135 (1965).

However, in my opinion, the case does not involve bad faith by the appellant by virtue of his retirement from his income-producing employment. Furthermore, the fact that appellant may have been suffering from medical ailments is not relevant to this determination. I am of the opinion that regardless of the appellant's state of health, the appellant should not be deprived of an opportunity to retire even though the retirement would reduce the funds available for his wife's support.

In this case, the appellant was employed by Gimbels for forty-five consecutive years. As a condition of his employment, appellant was enrolled in the employer's retirement plan, whereby appellant qualified for retirement at the age of sixty. Thus, appellant, by fulfilling the age requirements and other necessary conditions of the retirement plan, was eligible for voluntary retirement at the age of sixty-one.

The relevant retirement plan authorizing voluntary retirement at sixty is but a reflection of a national trend in employer-employee relations. In today's modern and technologically oriented world, ever replete with the strain of competition and stress, the standard normal retirement age of sixty-five is no longer viable.[2]

---

[2] The Pension Reform Act, Pub. L.N. 93-406, §3(24) (Sept. 2, 1974) defines "normal retirement age" as: "the earlier of—

(A) the time a *plan participant attains normal retirement age under the plan*, or

A growing number of retirement plans now permit voluntary early retirement before sixty-five, thus relegating the normal retirement age to a loss of much of its former meaning. This is especially true in the retail industry (*i.e.*, Gimbels), where many employers are of the opinion "that retirement before sixty-five is desirable because of the competitive nature of the industry and the need for opening up opportunities for younger employees."[3] 1 P-H Pension and Profit Sharing ¶2016 (1971).

Thus, I conclude, that where the husband is authorized by a retirement plan to retire at a reasonable age,[4] such a retirement is not to be construed as an act of bad faith toward the wife or as a vindictive effort to withdraw from income-producing employment. And where the husband is properly authorized to retire, there is no need for the lower court to inquire into any

---

(B) the later of—

(i) the time a plan participant attains age 65, or

(ii) the 10th anniversary of the time a plan participant commenced participation in the plan." [Emphasis added]

[3] Statistics indicate that there is a trend toward permitting employees to receive early retirement pensions and the liberalization of early retirement requirements. See 1 P-H Pension and Profit Sharing ¶15,003.5 (1972).

[4] In *Commonwealth ex rel. Ross v. Ross*, 206 Pa. Superior Ct. 429, 213 A.2d 135 (1965), the appellant-husband, sixty-five years old, retired about seven months prior to the separation of the parties. The court, in modifying the support order based upon the appellant's pre-retirement income, found no evidence that his retirement was unreasonable or that he had left his employment in bad faith to deprive his wife of support.

In the instant appeal, although the appellant retired at the age of sixty-one, under the circumstances this retirement age is not unreasonable. Thus, the reasonableness of the age of retirement depends upon the individual circumstances of the case and such factors as the provisions of the relevant retirement plan and the husband's eligibility to retire thereunder.

of the husband's collateral reasons for retiring, *e.g.,* medical problems.

In my opinion, the appellant was not acting in bad faith by retiring, therefore, the lower court incorrectly looked to the appellant's pre-retirement earnings in determining his present earning capacity. This is a proper instance where an "order should not be based on the husband's earnings in the past, if it is unrealistic in light of his age or other circumstances." *Commonwealth ex rel. Ross v. Ross,* 206 Pa. Superior Ct. 429, 432, 213 A. 2d 135, 137 (1965).[5] *See also Jones v. Jones,* 348 Pa. 411, 35 A. 2d 270 (1944); *Commonwealth ex rel. Barnes v. Barnes,* 140 Pa. Superior Ct. 397, 14 A. 2d 164 (1940). The modified support order should not take into account appellant's earning capacity prior to retirement, but should consider only actual income from retirement, proceeds from land rental, etc. Therefore, I would remand this case to the lower court for a modification of the support order consistent with this opinion.

---

[5] The court in *Ross* noted that hardship might result from such a modification of a support order: "Retirement often reduces the income of the retired couple. Husbands and wives learn to adjust to their newly-limited means. In effect, they acquire a new station in life . . . [R]egardless of the husband's prior earnings, the wife could not reasonably have expected that his income would remain constant after he retired." 206 Pa. Superior Ct. at 433-34, 213 A.2d at 138.

---

DISSENTING OPINION BY VAN DER VOORT, J.:

I respectfully dissent.

While I feel that the majority of the Court correctly finds error in the action of the lower court, I do not join in the thought that this matter should be remanded for further medical testimony. In my view, the record as it presently exists, amply supports the conclusion that the appellant-husband did not retire solely to ex-

tinguish or reduce his income and concomitant support obligation. Further, on the basis of all of the evidence in the record, I would order a reduction in support payments and enter a new Order for Support in the amount of sixty-five ($65.00) dollars per week.