Commonwealth ex rel. Levy, Appellant,
*v.* Levy.

Argued September 10, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lawrence J. Richette*, for appellant.

*Jack M. Myers*, with him *Zack, Myers and Atkinson*, for appellee.

Opinion by Price, J., April 22, 1976:

This is an appeal from an order of the Court of Common Pleas of Philadelphia County denying the appellant's petition for an increase in support for herself and her seven children. We find that the lower court abused its discretion in entering such an order. We therefore vacate the order below and remand this case to the lower court with instructions to increase the existing support award in a manner consistent with this opinion.

On September 18, 1973, the lower court ordered the appellee, Dr. Walter Levy, to provide $400 per week, or $20,800 annually, for the support of the appellant, Rosemary Levy, and their seven children. Neither of the parties, who had been separated since May 15, 1973, appealed this order. On September 16, 1974, the appellant petitioned the court below to increase the support order. After a hearing, the lower court dismissed the appellant's petition on May 14, 1975.

The record shows that when the lower court entered its initial order on September 18, 1973, Dr. Levy was employed as a professor of pathology at Temple University Medical School, earning $39,700 annually. Shortly thereafter, however, Dr. Levy obtained additional employment at the Philadelphia Medical Laboratory and

at the Philadelphia College of Osteopathy from which he received approximately $8,143 per year.[1]

In July of 1974, Dr. Levy left Temple University Medical School to become the director of the pathology laboratory at St. Agnes Hospital in Philadelphia. Dr. Levy's contract with St. Agnes Hospital called for three years of service at a salary of $70,000 per year with a six per cent increase annually. During 1974, Dr. Levy also retained his employment with the Philadelphia Medical Laboratory and the Philadelphia College of Osteopathy, earning about $10,309 annually. Thus, although Dr. Levy's total income for 1974 was approximately $66,180,[2] he was actually earning at the rate of $80,143 per year while he was employed by St. Agnes Hospital.

Despite his much increased salary, and three year contract, Dr. Levy remained at St. Agnes Hospital for only six months. On January 2, 1975, he began work at Hahnemann Medical College and Hospital in the dual capacity of professor of pathology and director of the pathology laboratory at an annual salary of $52,000.[3] In explanation of his resignation from St. Agnes Hospital, Dr. Levy testified that he had taken the job with St.

---

1. In its opinion, the court below concluded that Dr. Levy's total income for 1973 was approximately $48,000. The record, however, indicates that Dr. Levy's salaries, from the Philadelphia Medical Laboratory and the Philadelphia College of Osteopathy were respectively $7,000 and $1,143 *per year*. Therefore, the actual income which Dr. Levy received from each of these sources in the three and one half months from September 18, 1973, until January 1, 1974, would necessarily be less than his stipulated full year salary.

2. For the first six months of 1974, Dr. Levy received a gross income of $22,217 from Temple University Medical School; for the last six months of 1974, he received a gross income of $33,654 from St. Agnes Hospital.

3. The lower court, in its opinion, states that Dr. Levy's annual salary at Hahnemann Medical College is $50,000. Although Dr. Levy himself testified to that effect (NT 18), Dr. Robert Holmes, senior vice-president for medical affairs at Hahnemann, testified that Dr. Levy annually receives $52,000 from the Hospital, not $50,000.

Agnes Hospital for the sole purpose of paying a total of $13,809 in bills incurred by his wife and children. And, once these bills were paid, he quickly returned to his more gratifying, but less lucrative, life as a teacher. On March 26, 1975, Dr. Levy resigned from his employment with the Philadelphia Medical Laboratory. However, he retained his position with the Philadelphia College of Osteopathy at a yearly salary of $1,143. Thus, he currently earns approximately $53,143 per year.

We have always held that the purpose of a support order is to determine a reasonable allowance for the support of children, keeping in mind the property and earning capacity of the parents and the station in life of the parties. *Commonwealth ex rel. Shumelman v. Shumelman*, 209 Pa. Superior Ct. 87, 223 A.2d 897 (1966). Once awarded, however, an order of support is not final and may be increased or decreased where the financial conditions of the parties change. *Commonwealth ex rel. Luongo v. Tillye*, 229 Pa. Superior Ct. 453, 323 A.2d 172 (1974). And, it is the burden of the party seeking to modify the order to show by competent evidence such a change of circumstances as will justify a modification. *Bell v. Bell*, 228 Pa. Superior Ct. 280, 323 A.2d 267 (1974).

Here, although the appellant was unable to prove that her own financial condition had significantly changed since the entry of the initial order, she was able to demonstrate conclusively that Dr. Levy's actual earnings had increased dramatically in that time. Specifically, the appellant's evidence showed that Dr. Levy was earning $39,700 per year when the initial order was entered; that he was earning at a rate of $80,143 per year when the petition to increase was filed; and that he was earning at a rate of $53,143 per year when the hearing on the petition to increase was held. The appellant now contends that the lower court incorrectly refused to adjust the existing support award to reflect the appellee's earning capacity of $80,143 per year.

It is unquestionable that the lower court was under a legal duty to consider the appellee's earning capacity in its decision to refuse the appellant's petition. Although no two support cases are precisely the same, and it is therefore difficult for an appellate court to state rules equally applicable to all cases, we have consistently held that in formulating an equitable support order the lower court is not restricted to the defendant's actual earnings, but should also consider his earning power. *See, e.g., Commonwealth ex rel. Burns v. Burns,* 232 Pa. Superior Ct. 295, 331 A.2d 768 (1974); *Hecht v. Hecht,* 189 Pa. Superior Ct. 276, 150 A.2d 139 (1959). And, as we have previously declared: "This is especially true where it appears that appellant voluntarily left his position with an extreme reduction in pay. The court may consider such a reduction as an intended circumstance, ... and look to the earning capacity of the party." *Commonwealth ex rel. McNulty v. McNulty,* 226 Pa. Superior Ct. 247, 250-251, 311 A.2d 701, 703 (1973).

In refusing to grant the appellant's request to adjust the existing support award to reflect Dr. Levy's earning capacity of $80,143 per year, the court below concluded that:

"In the instant case respondent testified that for sixteen years he had been primarily a professor of pathology, devoted to the academia [sic] aspects of medicine; that he had taken other employment for the purpose of clearing up his debts; and that after six months, having accomplished that goal, he returned to academia.

"It was only during this brief six month period that Dr. Levy had the *potential* to earn $80,000.00 per year; and we find it untenable under the circumstances of this case and in light of respondent's history as a teacher that the six month period should govern our decision."

We realize that the scope of appellate review in support proceedings is narrowly defined, and we will not,

and indeed should not, interfere with the lower court's holding absent a clear abuse of discretion. *Commonwealth ex rel. Luongo v. Tillye, supra.* In determining whether the lower court's action constituted a clear abuse of discretion, we recognize that: "[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Man O'War Racing Assn., Inc. v. State Horse Racing Comm.,* 433 Pa. 432, 451 n. 10, 250 A.2d 172, 181 n. 10 (1969), *quoting Mielcuszny v. Rosol,* 317 Pa. 91, 93-94, 176 A. 236, 237 (1934).

As previously stated, the appellant, in order to gain an increase in support, was required to prove that Dr. Levy's financial status had changed materially *since the entry of the existing support award.* Therefore, it is clear that the lower court's scope of review on the hearing to increase support was limited to those changes in Dr. Levy's financial condition which occurred *subsequent* to the entry of the existing award. In the instant case, however, the lower court failed to so limit its scope of review. In rejecting the appellant's petition for an increase in support, the court below placed much emphasis upon Dr. Levy's statement that he began work at St. Agnes Hospital for the sole purpose of settling his debts and that he intended to forsake teaching for only a short time. The record clearly demonstrates that the debts to which Dr. Levy referred were in existence at the time of the original support award and were considered by the lower court in its formulation of that award.[4] Information concerning these debts of Dr. Levy was totally irrelevant to the issue before the court below. We find, therefore, that the lower court exceeded its legal

---

4. The record also shows that a small portion of these debts had been paid *prior* to the entry of the initial support award.

authority, and thereby abused its discretion, when it admitted into evidence any testimony concerning the debts of Dr. Levy.

Additionally, even if we were to find that the lower court had not overridden the law, we would be constrained to hold that the judgment of the lower court was "manifestly unreasonable," and therefore constituted an abuse of discretion, because it was premised upon the credibility of Dr. Levy's testimony.[5] Although determinations of credibility are normally within the province of the fact-finder, *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969), we believe that the conclusion of the court below that Dr. Levy's testimony was credible was not supported by the facts appearing on record.

For example, the lower court relied on Dr. Levy's statement that he intended to remain only briefly at St. Agnes Hospital to conclude that the subsequent increase in Dr. Levy's earning capacity was not permanent, but temporary in nature. Although it is true that temporary losses or gains will not justify a reduction or increase in a support order, *e.g.*, *Commonwealth ex rel. Goldenberg v. Goldenberg*, 159 Pa. Superior Ct. 140, 47 A.2d 532 (1946), the circumstances surrounding Dr. Levy's employment with, and resignation from, St. Agnes Hospital reveal that his increase in salary was not intended to be merely a transitory emolument. The record shows that Dr. Levy negotiated a contract with St. Agnes Hospital which exacted three years of service from him in return for a high rate of compensation, including annual raises. The existence of a three year contract directly contradicts Dr.

---

5. In refusing to grant the appellant's request to reflect the appellee's earning capacity of $80,143 per year, the court below also reasoned that during the six month period in which the appellee was employed at St. Agnes Hospital he only had the *"potential* to earn $80,000 per year." However, the evidence clearly shows that the appellee was not merely *capable* of earning $80,143 per year, but that he *actually* was earning at the rate of $80,143 per year.

Levy's statement that he intended to remain at St. Agnes Hospital for only a short time. Furthermore, we believe that a three year contract of employment evidences an economic permanency not ordinarily found in modern society.

Further suspicions arise as to the appellee's credibility by the fact that he notified St. Agnes Hospital of his intention to resign on October 1, 1974, only two weeks after the appellant filed her petition for an increase in support. Undoubtedly, a father or husband cannot intentionally reduce his actual earnings for the purpose of diminishing the amount of support he is obligated to provide for his family or wife. *Cf.*, *Commonwealth ex rel. Burns v. Burns*, 232 Pa. Superior Ct. 295, 331 A.2d 768 (1974). And, we have traditionally viewed with suspicion any sudden reduction in actual earnings. *Cf.*, *Snively v. Snively*, 206 Pa. Superior Ct. 278, 212 A.2d 905 (1965). Here, Dr. Levy testified that his sole purpose for working at St. Agnes Hospital was to liquidate his debts, and that he left the hospital when this goal was accomplished in order to return to teaching. However, an examination of the record reveals that Dr. Levy's duties at Hahnemann Medical College and Hospital, an affiliate institution of St. Agnes Hospital, are not solely those of a teacher. He is also required to spend much time performing research and engaging in patient care. In view of Dr. Levy's present limited duties as a teacher, we must seriously doubt the validity of his contention that he left St. Agnes Hospital for no other reason than to devote himself solely to the academic aspects of medicine.

We therefore vacate the order below and remand this case to the lower court with instructions to increase the existing support award in a manner consistent with this opinion.

JACOBS, J., dissents.

HOFFMAN, J., did not participate in the consideration or decision of this case.

CONCURRING and DISSENTING OPINION BY SPAETH, J.:

I join in the order for remand only because I find some possible ambiguity in the record. Were it not for this, I would affirm the order of the lower court denying appellant's petition for an increase in support.

The scope of appellate review in support proceedings is limited, and we will not disturb the lower court's determination absent a clear abuse of discretion. *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa. Superior Ct. 301, 310 A.2d 672 (1973). This is especially true where the credibility of a witness is at issue, since "the trial judge who sees and hears the witnesses is in a better position than the Superior Court to decide the issue on its merits." *Commonwealth ex rel. Friedman v. Friedman*, 223 Pa. Superior Ct. 66, 67, 297 A.2d 158, 159 (1972) (*allocatur refused*, 223 Pa. Superior Ct. *xxxv*).

Here the lower court believed appellee's testimony, and found his net weekly income from his full-time position at Hahnemann Medical College and Hospital[1] and his part-time position at the Philadelphia College of Osteopathy to be $545. The existing support order was $400 a week, or nearly 75% of appellee's net weekly income. In the lower court's opinion, to increase this order would have been "unreasonable, confiscatory and punitive."

The lower court recognized that during the six-month period when appellee was working as a practicing pathologist at St. Agnes Hospital, he was earning at an annual rate of $80,143. The court did not base its order on that figure, however, because it found that that employment was temporary and that appellee had left it for valid reasons. The court stated: "... respondent testified that for sixteen years he had been primarily a

---

1. The lower court erroneously stated appellee's annual salary at Hahnemann as $50,000 rather than $52,000. This did not affect its final order, however, for it was based on testimony regarding weekly income.

professor of pathology, devoted to the academia [*sic*] aspects of medicine; that he had taken other employment for the purpose of clearing up his debts; and that after six months, having accomplished that goal, he returned to academia."

The majority holds that the lower court abused its discretion in two respects — first, when it admitted into evidence any testimony concerning the debts of appellee and second, when it found that appellee's testimony was credible. I cannot agree with the majority on either of these points.

It is true that when a modification of a support order is requested, the court looks at the change of financial circumstances subsequent to the entry of the order. It is also true, as the majority points out, that the debts to which appellee referred in his testimony did not arise subsequent to the entry of the order but existed at the time of entry. Thus evidence of the debts was not evidence of a change of circumstances. What the majority overlooks, however, is that evidence of the debts was not admitted as evidence of a change of circumstances but only to explain appellee's acceptance of and resignation from employment at St. Agnes Hospital; the evidence was not used by the court to calculate the proper amount of the support order. Admission for that limited purpose was certainly proper. Appellee's desire to pay accumulated debts was a reasonable explanation of his six-month stint at St. Agnes. Although the debts were considered in the calculation of the original support order, we should not penalize appellee for trying to pay them more quickly than the order contemplated.

The majority also challenges the credibility of appellee's statements that he left St. Agnes after only six months because the debts were paid and he wished to return to teaching. I find no reason to disbelieve appellee.[2] In fact, as the lower court states, appellee's

---

2. I do not suggest that we may never disbelieve testimony in a

entire professional career, with the exception of those controversial six months, had been devoted to teaching.[3]

I do not differ with the majority's statement of the law. The court may indeed consider the earning power of the obligor spouse as well as actual earnings, and that consideration is particularly important in cases where the obligor spouse has voluntarily left employment with an extreme reduction in pay. *Commonwealth ex rel. McNulty v. McNulty*, 226 Pa. Superior Ct. 247, 311 A.2d 701 (1973). It is also true, however, that a support order should not be confiscatory. *Commonwealth ex rel. Goichman v. Goichman*, 226 Pa. Superior Ct. 311, 316 A.2d 653 (1973); *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer, supra.* Nor will temporary losses or gains justify a reduction or increase in a support order. *Commonwealth ex rel. Goldenberg v. Goldenberg*, 159 Pa. Superior Ct. 140, 47 A.2d 532 (1946); *see also, Bell v. Bell*, 228 Pa. Superior Ct. 280, 323 A.2d 267 (1974). This court has never said that the wage-earner in a support proceeding must subordinate his valid professional aspirations to the financial expectations of his family.

---

support proceeding. When the record on its face shows the testimony to be clearly evasive or contradictory, we may find the record inadequate to support the legal conclusions of the lower court. *Weiser v. Weiser*, 238 Pa. Superior Ct. 488, 496, 362 A.2d 287, 290 (1976). (concurring and dissenting opinion of SPAETH, J.) We should not, however, nullify the fact-finding function of the hearing judge. *Commonwealth ex rel. Harry v. Eastridge*, 374 Pa. 172, 97 A.2d 350 (1953).

3. The majority doubts appellee's commitment to teaching because his duties "are not solely those of a teacher. He is also required to spend much time performing research and engaging in patient care." Majority opinion at p. 176.

We may judicially notice that medical school professors, unlike some other graduate school professors, do not perform their teaching duties solely in the classroom. A large part of medical teaching is clinical in nature, including teaching "rounds" in the hospital, student observation of patient care, and faculty supervision of student care of patients. Furthermore, research is one of the "academic aspects of medicine."

*Commonwealth ex rel. Haimowitz v. Haimowitz*, 221 Pa. Superior Ct. 364, 292 A.2d 502 (1972); *Weiser v. Weiser*, 238 Pa. Superior Ct. 488, 496, 362 A.2d 287, 290 (1976) (concurring and dissenting opinion of SPAETH, J.). *See also, Commonwealth ex rel. Burns v. Burns*, 232 Pa. Superior Ct. 295, 331 A.2d 768 (1973). That is nevertheless the effect of the majority's opinion, an effect I regard as particularly unfortunate because of the extent to which it interferes with the discretion of the lower court.

Here, the lower court, after considering appellee's earning potential, his career history, and his career aspirations, decided that appellee's actual earnings were a realistic and satisfactory base for an equitable support order. If one excludes for a moment the St. Agnes interval, appellee has actually *increased* his annual salary from the $39,700 he was earning at Temple at the time of the original support order to the $52,000 he presently earns at Hahnemann. Even if we consider the temporary St. Agnes salary, I cannot say that leaving a higher-paying job in order to teach is an irresponsible decision. $52,000 is after all a respectable annual salary. This is not a case like *Commonwealth ex rel. Haley v. Haley*, 199 Pa. Superior Ct. 235, 184 A.2d 155 (1962), where the husband left a higher paying position without adequate justification. Nor is it a case like *Commonwealth ex rel. McNulty v. McNulty, supra*, where the husband left his $155 a week job as a steelworker to become a $56.88 a week bartender.

Nevertheless I would also remand the case to the lower court for further proceedings since I find an unresolved conflict in the record as to what appellee's net income is. Appellee testified that his net weekly earnings were $545. At that rate, his net annual salary would be $28,340. Yet appellee's attorney stated, both at the lower court hearing and in his brief to this court, that appellee's net annual income is $35,765. The attorney's statements, of course, are not evidence. They are

significant, however, because they highlight a conflict in appellee's own testimony. According to appellee, his personal expenses monthly are $1,175 or $14,100 annually. The total of the yearly support payments ($20,800) and appellee's personal expenses ($14,100) is $34,900. This figure more closely matches the attorney's statement of appellee's net annual income than does a calculation derived from appellee's testimony as to his net weekly income.

The lower court relied on appellee's figure, and, if that figure is right, I think the lower court's disposition of the case is correct. If the higher figure is correct, however, the lower court should reconsider, although not necessarily change, its order. The documents appellee submitted regarding his financial condition should resolve the conflict. This court is precluded from reviewing those documents, however, since they were not made part of the record sent to this court as they should have been.

For these reasons, I would remand to the lower court for further proceedings in accordance with this opinion.