## Commonwealth v. Harmon

*Kenneth F. Lee*, for petitioner.
*Timothy S. Sponseller*, for respondent.

EPPINGER, *P.J.*, November 24, 1978—George R. Harmon (George) is separated from his wife,

Emma B. Harmon (Emma) and is living in New Jersey. She is in Chambersburg, Pa. Ordinarily we would not find this an occasion to discuss the reasons why George left since he concedes the support duty, but Emma's counsel believes that he has voluntarily suffered a decrease in income to remain in New Jersey. He was employed at Letterkenny Army Depot, was placed on temporary duty and when he was directed to return to Chambersburg, he elected to retire.

George's retirement income is $300 weekly. The evidence established that before retirement, his take-home income from all sources was about $325 weekly. If he has suffered a loss in real income, it is a small amount. When we made the order in the case, which we called a temporary order because Emma's counsel wanted to present a brief on the subject, we fixed Emma's support at $100 a week, just one-third of George's weekly retirement income. Are we limited to one-third as George contends, or can we fix a higher figure as Emma believes?

Emma has requested support in the amount of $600 monthly which would not cover her listed expenses of $733. George inherited $14,000 from his mother and this sum and $3,000 more are in the Employees Credit Union at Letterkenny Army Depot. Should we dip into this in fixing the support order?

## EARLY RETIREMENT

George retired March 31, 1978 after 37 years of government service. He was 55 years old. Our courts have consistently held that the purpose of a support order is not to punish the husband for his

misconduct toward his wife. See, e.g., Com. ex rel. Baugher v. Baugher, 5 Adams 104 (1957). Therefore, if George did retire to remain with a girlfriend as the facts suggest, we are not at liberty to impose a punitive support order on him.

Nevertheless, trial courts are to be especially watchful where there may be some question of the husband's good faith: Com. ex rel. Rosen v. Rosen, 91 Montg. 122, 125 (1960), citing Com. ex rel. Spielvogel v. Spielvogel, 181 Pa. Superior Ct. 61, 121 A. 2d 886 (1956). If the evidence demonstrates that a husband retired solely to extinguish or reduce his earnings to avoid support payments to his wife, the court would be justified in making an order based on the husband's pre-retirement income: Com. ex rel. Burns v. Burns, 232 Pa. Superior Ct. 295, 331 A. 2d 768 (1974).

In Burns, a 61-year-old man retired after working 45 years. The case was remanded by the majority when the court held that the entire circumstances of a man's retirement must be examined to determine the extent of his responsibility to support his estranged wife. Two factors were deemed relevant in deciding whether the award should be based on pre-retirement income: Whether he planned to retire at a certain age and the state of his health.

In a dissent, Judge Price stated that he would base the order on post-retirement income, noting that the strain of competition and stress makes the standard normal retirement age of 65 no longer viable. It was his view that if the plan under which the husband is working authorizes him to retire at a reasonable age, retiring at that age should not be construed as an act of bad faith toward the wife or as a vindictive effort to withdraw from income-producing employment. The Federal Government

retirement plan permits retirement at 55 with 30 years of service.

As we stated this is hardly an issue in this case. We do not conclude that George retired to reduce his support payments—at the time of his retirement there was no support order. He retired to be able to stay in New Jersey. Even so his spendable income was not drastically reduced by the step. In Com. ex rel. Ross v. Ross, 206 Pa. Superior Ct. 429, 433-34, 213 A. 2d 135, 138 (1965), the court said: "Retirement often reduces the income of the retired couple. Husbands and wives learn to adjust to their newly-limited means. In effect, they acquire a new station in life."

## ONE-THIRD RULE

Generally, Pennsylvania courts have held that a husband should not be required to pay more than one-third of his total income for the support of his wife. See, e.g., Com. ex rel. Keeth v. Keeth, 223 Pa. Superior Ct. 96, 289 A. 2d 732 (1972); Com. ex rel. Lipsky v. Lipsky, 214 Pa. Superior Ct. 215, 251 A. 2d 729 (1969); Com. ex rel. Milne v. Milne, 150 Pa. Superior Ct. 606, 29 A. 2d 228 (1942). However, qualifications to the one-third rule have evolved because in some cases an award based on the one-third rule would be inequitable.

One such qualification to the one-third rule is that "income" is not limited to actual earnings; it encompasses the supporting individual's "earning capacity" as well: Com. ex rel. McNulty v. McNulty, 226 Pa. Superior Ct. 247, 311 A. 2d 701 (1973). This allows the court to award reasonable support in cases where the supporting individual has tried to escape liability by withdrawing from all

income producing endeavors: Com. ex rel. Wieczorkowski v. Wieczorkowski, 155 Pa. Superior Ct. 517, 38 A. 2d 347 (1944); or has sought to minimize his support payments by taking low paying employment not commensurate with his earning potential: Com. ex rel. Raitt v. Raitt, 203 Pa. Superior Ct. 226, 199 A. 2d 512 (1964); Com. ex rel. McNulty v. McNulty, supra.

Emma's position is that this is one of those cases in which income alone should not be the basis for determining the support award. We are asked to consider George's Letterkenny Credit Union account which contains $17,000.

While it is true that the court should consider a supporting individual's earnings, his earning power and his attendant financial conditions, including the kind and amount of his assets: Com. ex rel. DiSanti v. DiSanti, 221 Pa. Superior Ct. 435, 293 A. 2d 115, allocatur refused, 221 Pa. Superior Ct. xliv (1972); it appears that courts include cash assets in the basis of their awards only in extraordinary circumstances. For example, in Com. ex rel. Rahill v. Rahill, 97 Montg. 306 (1974), the supporting husband reported his income as between $13,000-$16,000 per year. But he had built up a savings account of $10,000 and a stock portfolio worth $30,000. The court awarded support payments exceeding one-third of the husband's reported income saying that his accumulation of savings following led it to believe his income was "far in excess of that which he reported."

The instant case does not present a situation in which the supporting individual's capital is disproportionate to his income. Were that so, cash assets could no doubt be considered in "upping" the

amount of support awarded. But here, Emma will receive reasonable support payments based on George's post-retirement income. She has a savings account in her own name of $1,800, lives in a house which she owns jointly with George and on which he is making the mortgage payments, has worked in the past, though her present ability to get a job at age 53 with heart murmur and high blood pressure may be questioned. In addition to making the mortgage payments, George is also paying the tuition and other expenses for their son who is attending the University of Pittsburgh.

All support orders are subject to modification if conditions change. With the obligations George has accepted to pay the mortgage and to pay his son's expenses, even considering that there may be some income from his credit union account, we believe that the order of $100 is a correct one and see no reason to change it.

We file this opinion in support of that order.