435 A.2d 214

**COMMONWEALTH of Pennsylvania ex rel. Sandra V. KISTLER**

v.

**George W. KISTLER, Jr.**

**Appeal of Sandra V. KISTLER.**

Superior Court of Pennsylvania.

Argued March 3, 1981.

Filed Sept. 25, 1981.

6. Prerequisites (4) and (5) are set out on page 211, infra.

Mark S. Sigmon, Bethlehem, for appellant.

Joseph C. Bernstein, Allentown, for appellee.

Before CERCONE, President Judge, and WICKERSHAM and BROSKY, JJ.

BROSKY, Judge:

This is a support case. Sandra Kistler has appealed from the lower court's order granting appellee's petition to modify and reducing the amount of support to be paid to appellant from $225 per week to $100 per week, retroactive to the date of filing, March 17, 1980. In addition, appellee was found to be in contempt of court and directed to pay $1,500 within 30 days. The issue before us is whether appellee

showed a change in circumstances which would justify the reduction. We find that he did not, and accordingly reverse.

The basic facts, which are not in dispute, are as follows. The parties were married on March 9, 1974, and separated August 17, 1978. Prior to and during her marriage, Mrs. Kistler was employed by United Airlines. When her husband insisted that they move from New Jersey to Allentown, Pennsylvania, Mrs. Kistler continued to work for United Airlines on a part-time basis, in their Allentown office. At all times relevant to this appeal, appellee was and remains, president of Geo. W. Kistler, Inc. The six hundred pages of testimony taken during the three hearings in this case focus primarily upon the earnings and losses of Geo. W. Kistler, Inc. At the time of the December 5, 1978 hearing, appellee was the president and sole shareholder, receiving a weekly salary of $900, for a gross yearly salary of $46,000. The corporation provided appellee with a vehicle, a 1978 Cadillac, and paid all the insurance, gas and maintenance expenses. The corporation also provided appellee with Blue Cross and Blue Shield; paid all his travel and entertainment expenses, and paid him a monthly rental of $2,000 for a building which it leases from him. As of December 5, 1978, appellee's net worth was $200,000. At the time of the December 5, hearing, appellee resided with his father, but testified that he intended to purchase a condominium for $54,000.

At the November 14, 1979 hearing, appellee testified that his corporation had a severe "working capital" problem, and that upon the advice of a management consultant, he had reduced his salary from $900 to $700 per week. Due to the need for capital, Mr. Kistler opened up his corporation to an outside investor, a Mr. Kuthy, who purchased roughly 25% of the corporation's stock. Based upon the purchase price, the stock of the corporation was worth approximately $200,000 at the time of purchase, according to Thomas McDonald, the certified public accountant who handled the corporation's books. The testimony of Mr. McDonald established that the purchase of the stock was very beneficial to the corporation.

Appellee also testified that his mother had purchased the condominium about which he had testified at the December, 1978 hearing, because the bank had denied him a mortgage; and that he was living in it and paying her $325 per month rent, plus $55 per month for maintenance. Although he indicated that he had an agreement with his mother that he would pay her back for the purchase of the condominium, no written agreement was produced by him to this effect; and he admitted that he was not currently making any payments to her.

At the February 13, 1980 hearing, Mr. Kistler testified to a personal financial statement prepared by him which showed his net worth to be $177,124 as of June 22, 1979. He also stated that he owned real estate worth $220,000, encumbered by a mortgage of $153,598.

Appellee stated that his net worth as of February 13, 1980 was approximately $170,000. He also testified that he had received $19,000 as his share of the proceeds upon the sale of the marital residence.

At the April 30, 1980 hearing, appellee testified that his total income for 1979, as indicated on his W--2 form, was $38,800. His weekly income of $700 had remained the same, and he was still receiving the same amount of monthly rental income from the corporation for the use of the building. Mr. Kistler also received the same benefits as before, including the car and health insurance. The only significant change testified to by appellee with regard to the financial condition of his corporation was the fact that an ongoing sales and use tax audit had been concluded unfavorably, resulting in a $14,000 deficiency owed to the Bureau by the corporation. Mr. Kistler stated that this obligation was going to be repaid at the rate of $1,000 per month.

Mrs. Kistler testified that she lived with her parents, paying them $75 per week. She was still employed by United Airlines part-time; however, her hours had been decreased from 3½ hours per day for 4–5 days per week to 1½ hours per day for 6 days per week. Her hourly pay increased from the time of the first hearing, from $8.12 per hour to $10.57 per hour.

At the time of the April, 1980 hearing, it was established that the arrearages on the original support order were $7,680.

■ At the outset, we note that our scope of review in this case is narrowly defined, and that we will not interfere with the lower court's determination absent a clear abuse of discretion. *Commonwealth ex rel. Levy v. Levy*, 240 Pa.Super. 168, 361 A.2d 781 (1976); *Commonwealth ex rel. McQuiddy v. McQuiddy*, 238 Pa.Super. 390, 358 A.2d 102 (1976).

An abuse of discretion does not necessarily imply a willful abuse, but if, in reaching a conclusion, the law is overridden or misapplied *or the judgment exercised is manifestly unreasonable as shown by the evidence or the record*, discretion is then abused and it is the duty of the appellate court to correct the error. (Emphasis in original). *Prescott v. Prescott*, 284 Pa.Super. 430, 435, 426 A.2d 123, 126 (1981).

"A finding of abuse of discretion is not lightly made; but only upon a showing of clear and convincing evidence." *Commonwealth ex rel. Hartranft v. Hartranft*, 267 Pa.Super. 572, 574, 407 A.2d 389, 390 (1979).

■ It is equally well established that it is the burden of the party seeking to modify a support order to show by competent evidence such a change of circumstances as will justify a modification. *Commonwealth ex rel. Levy v. Levy*, supra; *Bell v. Bell*, 228 Pa.Super. 280, 323 A.2d 267 (1974). The change must be material and substantial. *Bell v. Bell*, supra.

■ Here, we find, upon a thorough examination of the record, that appellee has not met his burden of showing such a change of circumstances. Appellee's evidence consists primarily of his testimony to the effect that his net worth decreased from $200,000 to $177,000. We do not find this decrease to be substantial or meaningful, especially in view of the fact that appellee's corporation is still financially viable. Although appellee's accountant testified that the

corporation had working capital problems, it also was established that those problems were greatly diminished by the addition of Mr. Kuthy, who purchased 25% of the corporation's stock. The corporation continues to supply Mr. Kistler with an automobile and to pay for all expenses in connection therewith. Mr. Kistler continues to receive a monthly rental of $2,000 from the corporation for use of his building, which is valued at $220,000 less the mortgage encumbrance of $153,598. Therefore, the fact that appellee's net worth may have decreased, when viewed in light of all the relevant facts, *Bell v. Bell*, supra, is not sufficient to warrant a modification.

■ The corporation is still financially sound, and continues to provide appellee with a weekly income of $700, for an approximate yearly income of $36,000. Although appellee makes much of this reduction in salary, the record shows that he agreed voluntarily to it, in order to help the corporation. We can see no reason why appellee's salary could not be increased now that the corporation's financial problems have been mitigated. Also, it is well established that it is the earning power and not merely the actual earnings, which must be considered. *Commonwealth ex rel. Levy v. Levy,* supra. In *Levy,* a physician voluntarily took a reduction in pay by changing jobs. We held that the court may consider such a reduction as an intended circumstance, and may ignore the actual earnings and look to the defendant's earning capacity.

It is clear here that appellee's earning capacity has not diminished, and that his reduction in salary to benefit the corporation does not reflect his actual earning capacity.

Mr. Kistler's only other evidence of changed circumstances is that he now pays to his mother a monthly rental of $325 plus a $55 maintenance fee; whereas at the time of the December 5, 1978 hearing appellee lived rent-free with his father. The only personal debt testified to by appellee is the amount claimed to have been advanced by his mother to purchase the condominium. No judgment note or other written evidence of this debt was produced by appellee at

the time of trial, and appellee testified that he had not yet begun repayment on this obligation.

For these reasons, we hold that the court below abused its discretion, in that the evidence presented by appellee is insufficient to show such a permanent change in circumstances as would justify a modification. *Commonwealth ex rel. Roviello v. Roviello*, 229 Pa.Super. 428, 323 A.2d 766 (1974). Appellee's circumstances have not materially or substantially changed since the original order for support was entered in December, 1978.

Accordingly, we hold that the lower court was not justified in modifying the support order of December 27, 1978. The order of August 26, 1980 is reversed, and the order of December 27, 1978 is reinstated, as entered by the Court of Common Pleas retroactive, however, to August 26, 1980, allowing credit for any payments thereunder.