Commonwealth *v.* Surovitz, Appellant.

Argued March 4, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*Wm. B. Landis,* for appellant.

*Leon M. Levy,* with him *Ellis Berger,* Assistant District attorney, and *James F. Brady,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., April 15, 1942:

This appeal is from the order of the court below refusing to reduce the amount that the appellant had been

previously directed to pay for the support of his wife.

The record discloses that this husband and wife have not lived together since December 1928. Shortly after the separation the wife instituted a proceeding under the Act of April 13, 1867, P. L. 78, §2, 18 PS §1252, for support. The court after hearing directed the husband to pay the sum of $125 per month for her support. On March 30, 1932, the court modified its original order reducing the sum to be paid to $70 per month. Thereafter the husband made several attempts to have the amount of the order further reduced and the wife sought to have it increased. He filed a petition on March 8, 1940, alleging his financial inability to comply with the court's order. The wife in her answer averred her need for additional funds and again asked that the order be increased. After a hearing the court refused to make any modification of the previous order, and in addition directed the petitioner to pay $194.50 to the Hahnemann Hospital for treatment rendered the wife, and a doctor's bill of $395. This appeal followed.

The evidence disclosed that Jacob Surovitz, this appellant, is the owner of three valuable pieces of real estate; two adapted for business purposes are located in the city of Scranton, and the third, a combined business and residence property, is in the borough of Olyphant. Surovitz claimed that the rental therefrom was his only source of income and that after the payment of taxes, insurance, necessary repairs, etc., his net income amounts to but $50 per month, and that he is physically unable to work as he has lost an arm. He admitted, however, that he had on deposit in the Miners Savings Bank and Trust Company of Olyphant, when it closed its doors September 29, 1931, the sum of $73,160.02; that he received, up to and including May 28, 1940, from the receiver of this closed banking institution 60% of his deposit or a total of $43,896. Three weeks prior to the closing of the bank Surovitz had withdrawn therefrom the sum of $8,134.44 so that he

received, exclusive of rentals, from September 1931 to the date the last order was made by the lower court June 19, 1941, a total of $52,030.44, or over $5,000 a year.

Surovitz claims that practically all this money was used for the payment of his indebtedness, maintaining his property, and that he gave $10,000 in cash to his daughter, as the money in the bank was realized from a sale of real estate which had belonged to her mother. This daughter has been residing in California for eight years and the father apparently had very little knowledge concerning her. The alleged indebtedness consisted of $15,000 owing George Chylak, and $36,000 due J. A. Green.

Surovitz stated that Chylak in 1927 gave him $15,000 in cash as a loan to pay a purchase money mortgage, at a time when Surovitz had a balance in bank of $80,000, and that he repaid the loan in cash from installments received from the closed bank; that he gave Chylak a judgment note, but it was never recorded. Chylak, the creditor, was not called as a witness to corroborate Surovitz' testimony relating to his loans. It seems highly improbable that Surovitz would incur an indebtedness of $15,000 when he had available sufficient funds to pay off the mortgage debt, and that this alleged transaction involving a large amount of actual cash would be conducted in such an informal manner.

Surovitz' account of his dealings with Green was equally amazing. He testified that Green loaned him money on three different occasions, 15 to 18 years ago, amounting to $17,000. In each instance cash was delivered. Surovitz said that he gave his judgment note to Green, which was never recorded. His further recollection of these transactions appeared to be very defective. He was unable to state Green's christian name, did not know his occupation or where he resided when he lived in Scranton; he could not tell the dates the loans were made, nor give the present address of Green

in California where he has been residing for the past 15 years. There seemed to be no communication between these two men after the money was borrowed until Green arrived in Scranton in December 1939. Then he made a demand for a new judgment note for the principal debt and interest. Surovitz said he accepted Green's calculation of the amount owing and gave him, as requested, a judgment note for $36,000, which was entered of record in Lackawanna County. Nothing further happened until Green reappeared in Scranton in June 1940, when he asked payment of the money due him. The explanation that Surovitz gave for the appearance of Green at that particular time was that the latter had read in a Scranton newspaper, which he received in California, that a dividend was to be declared by the closed bank and that he came to Scranton to collect the money due him. Surovitz admitted that no demand was made for a specific sum either at that time or previously, but that he paid $3,500 in cash to Green, who then produced a receipt for that sum he had prepared, executed, and witnessed in California before his departure. It seems to be quite a coincidence that Green should have anticipated the exact amount that the debtor would pay. The lower court pertinently states that "his story ...... from beginning to end is preposterous."

The uncorroborated account given by the appellant of his indebtedness was so improbable, and portions of his testimony so evasive and contradictory, that it is not surprising that the lower court concluded that it was not worthy of belief, and that the statements he submitted at the trial did not fully and adequately represent the true income.

The primary duty rests upon the trial judge in determining what is a reasonable and proper sum to award for the support of a wife, and unless there appears a clear abuse of discretion we are not disposed to disturb the order and substitute our judgment for his:

*Commonwealth ex rel. v. Betts,* 76 Pa. Superior Ct. 96, 97; *Commonwealth v. Leonard,* 93 Pa. Superior Ct. 21, 22.

While this appellant's return from his real estate may not have been very large and somewhat irregular owing to vacancies, etc., that source of income was not the only matter to be taken into consideration in determining what was a reasonable amount to award to his wife for support. A lower court may very properly consider the nature and extent of all the husband's property and financial resources: *Commonwealth v. Knobloch,* 89 Pa. Superior Ct. 216, 218; *Commonwealth ex rel. Fort v. Fort,* 124 Pa. Superior Ct. 151, 188 A. 416; *Commonwealth ex rel. Simmler v. Simmler,* 134 Pa. Superior Ct. 339, 343, 4 A. 2d 215; *Commonwealth ex rel. Binney v. Binney,* 146 Pa. Superior Ct. 374, 378, 22 A. 2d 598.

We find nothing in this record that would justify our holding that the learned court below abused its discretion in failing to grant appellant relief. To the contrary we are in entire accord with its disposition of the application for a reduction of this support order.

We are of the opinion, however, that the court in this proceeding was not warranted in ordering the husband to pay the money owing by the wife to the hospital and physician. An order of support is for the purpose of covering the wife's necessities and the husband is not liable for indebtedness she may have incurred. A support order is presumed to be all inclusive and is for the purpose of providing the wife with money so that she can pay for the necessities furnished to her.

" 'The obligation of the husband for necessaries supplied her during coverture, arises from the law regarding her as his agent for that purpose; and hence his assent is implied to all contracts of this kind, made through her during cohabitation: Clancy on Married Women, 23, 1 Salk. 113.' " *Allen v. Rieder,* 41 Pa. Superior Ct. 534, 539; *Cany v. Patton,* 2 Ashmead, 140.

348

It was held in *Commonwealth v. Thomas Richards,* 131 Pa. 209, 18 A. 1007, that if proper provision has been made for a wife, her husband is not liable for necessaries furnished for her support. See, also, *Marshall v. Hill,* 59 Pa. Superior Ct. 481. When the parties separate the agency ceases. The wife cannot thereafter bind her husband for necessities even though the amount awarded her is insufficient.

The order of the court below as modified is affirmed and appellant directed to pay the costs.