## Commonwealth ex rel. Gutzeit *v.* Gutzeit, Appellant.

402

Argued December 10, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*C. Max Ivins,* for appellant.

*Edward L. Wolf,* with him *Richter, Levy, Lord, Toll & Cavanaugh,* for appellee.

OPINION BY WOODSIDE, J., March 21, 1963:

We are here reviewing an order entered by the County Court of Philadelphia against a husband for the support of his wife. We must determine whether the order must be reduced as excessive and whether it must be modified as being too indefinite.

The order from which the appeal was taken is as follows: "And now, July 25, 1962, Defendant is ordered to pay Mortgage, Taxes and Insurance on Brocklehurst Street Home. Defendant to pay *Electric, Gas and Gardening Bills, and maintain car for wife. Pay Professional Fees to Doctors, plus $145.00 per week (including $94.50 per week for Nursing Care)* to Wife."

We shall modify the order by striking therefrom that part which we have had printed above in italics, and we shall increase the cash order from $145 per week to $160 per week.

Samuel and Jean Gutzeit were married October 21, 1925, and lived together until December 20, 1961, when the defendant left the common domicile. Two children were born to the marriage. One died in his youth and the other, a son now 31 years of age, is married and has

three children. The petitioner is 55 years of age, and the defendant is 59. When the defendant left the petitioner, he closed all her charge accounts and paid her $50 a week and certain expenses of operating her house and automobile until March or April of 1962. After he stopped these payments, the wife brought this action.

The defendant is president, treasurer, salesman and the sole stockholder of Broad Electric Supply Company, a corporation engaged in the business of selling electrical appliances. The record shows that the defendant valued the company at "something under $600,000," but his attorney insists that in stating this sum the defendant misunderstood the question asked him, and the figure used was intended to refer to the annual gross sales of the company. The court below set the personal wealth of the defendant at $336,280.65. This figure includes assets of approximately $10,000 in addition to the corporation's stock, but omits the value of an automobile, a boat and his equity in Philadelphia and Atlantic City real estate.

It is argued that the value of the corporation was determined by the court below by duplicating the company's assets and ignoring its liabilities. On the basis of the calculation used by the court below, its valuation of the corporation is invalid. The book value appears to be only $69,000, but this, too, is not an accurate test of the true value. It is difficult to place a fair valuation on the stock of a closely held corporation. The court below while appraising certain corporate assets too high, places no value on the good will of the corporation. The good will of a prospering corporate business with 13 employes and nearly $600,000 gross sales has a substantial value. By adding a fair value of this good will to the corporation's other assets, its stock can be conservatively appraised at a sum between $100,000 and $200,000. But whether defend-

ant's total net worth approximates these sums, or is over $330,000 as found by the court below, makes little difference in the determination of this case. It is clear that the defendant's assets are substantial, and that he owns and operates a successful business. The assets of a defendant are to be considered in setting the amount of a support order. *Commonwealth v. Surovitz,* 148 Pa. Superior Ct. 342, 347, 25 A. 2d 761 (1942), but the important consideration here is the earning capacity of the defendant.

The defendant sets his own salary. He had the corporation pay him $16,725 in 1960, and $14,575 in 1961. After the marital difficulties developed, he had the corporation reduce his salary to $125 a week, or $102 take-home pay. This reduction was made in March or April, a few weeks after the company paid $800 to have his boat taken to Florida and back to Atlantic City. The reduction in salary was necessary, he said, because of the fall off of business. The trial court evidently did not believe him. Neither do we. The testimony shows that the defendant was, at best, a very reluctant, evasive and confused witness. Even his counsel suggests that the court should find his income to be more than twice his present "salary".

If there has ever been a case where the court had a duty to pierce the corporate veil, this is it. Examining the corporation's statement of income and retained earnings for the last two years, we find the corporation's net income before income taxes was $19,911. The retained earnings of the corporation between January 1, 1960, and December 31, 1961, increased from $89,-980 to $103,945, according to the auditor's report.[1]

During the two years, the corporation charged to entertaining $28,327, to depreciation and amortization of automobiles and trucks $7664, to insurance on officer's life $1272, to maintenance and repairs of auto-

---

[1] These figures include $40,000 treasury stock.

mobiles and trucks $9171, to miscellaneous $2806. These items total over $49,000, averaging over $24,500 a year. We refer to these figures not because in their entirety they constitute income to the defendant, but because they, along with other evidence, throw light upon the perquisites which the defendant realizes from his solely owned corporation. The defendant operates a 1960 Cadillac automobile, and a 36 foot Cris-Craft Cabin Cruiser which comfortably sleeps four people, and he travels and entertains extensively. These luxuries he enjoys at company expense. There is evidence that even the gasoline for his wife's automobile is charged to the corporation.

The defendant lives with his 31 year old son whose income is received entirely from his father's company. He pays no board or room rent. The son lives in a new $25,000 house, has a new Buick automobile (a company car), a boat, and an aeroplane.

The defendant won or earned from manufacturers of the products his company sells expense-free trips to Nevada, Florida and Europe. The corporation pays for a $25,000 life insurance policy on the defendant's life.

What then is the defendant's *earning capacity*? During the last two years, he had his corporation pay him an annual average salary of $15,650. His solely owned corporation earned an average of $9955 a year. The corporation paid the premium on the life insurance in which his solely owned corporation is the beneficiary. He has several hundred dollars annual income from stocks of other companies. The defendant lives with his son whom the corporation supports with a $25,000 home, an aeroplane, a boat and a new Buick automobile. The only fair inference which can be drawn from the evidence is that the charges made to the corporation by the defendant, even though they may be legal deductions for corporate income tax purposes, consti-

tute substantial perquisites to the defendant. All these must be considered in determining the defendant's earning capacity. It is evident that his salary, his corporate earnings, his life insurance, his direct perquisites from the corporation and his indirect perquisites obtained by living with his son in luxurious circumstances financed through his corporation would justify a finding that his *earning capacity* is at least $30,000 a year.

The Commonwealth has followed the policy that an order for the support of a wife should not exceed one third of the husband's earning capacity. The Act of February 26, 1817, 6 Sm. L. 405 provided that alimony to be paid by a husband in divorce from bed and board cases should "not exceed the third part of the annual profit or income of his estate or of his occupation and labour." See *McClurg's Appeal*, 66 Pa. 366, 374 (1871). This Court has held that by analogy the same rule should apply in proceedings for maintenance. *Commonwealth ex rel. v. Kramer*, 80 Pa. Superior Ct. 210 (1922); *Commonwealth ex rel. v. Milne*, 90 Pa. Superior Ct. 68, 72, 73 (1927). This rule has been firmly established and uniformly followed.[2] It is applicable not to his salary or income, but to his *earning capacity*, including any income that can be reasonably earned from his assets. On the basis of the evidence in this case, the order should not exceed $10,000 a year.

The defendant and his wife have title to a house on Brocklehurst Street in Philadelphia and another in Atlantic City.[3] The wife lives in the Philadelphia house.

---

[2] Our attention has been called to no case in which either this Court or the Supreme Court has made an exception to the rule. This is not such a case as would warrant the making of an exception to the general rule.

[3] No valuation was placed on these two properties, and the amount of the mortgages does not appear in the record.

The evidence shows that the monthly payments for mortgage, taxes and insurance are $98.50 on the Philadelphia property and $96.50 on the Atlantic City property. The electric, gas, gardening and car maintenance bills which the court directs the defendant to pay are estimated at $145.50 a month. Adding to these bills, the weekly payments and the prospective medical bills the order appears to be excessive, and must be modified.

Actually it is impossible to determine even the approximate amount of the order, and thus it is impossible to test it by the one-third principle. This is one of several reasons why the order must be modified.

To determine what part of the order should be affirmed, we must break it down into various categories. We shall consider first that part of the order directing the defendant to pay professional fees to doctors.

Although this support order can operate only prospectively,[4] it is apparent from the court's opinion that this part of the order was intended to apply to medical services rendered prior to the entry of the order as well as those accruing after the order was entered. The court below thought it was justified in entering an order to pay these bills because medical bills are necessaries and a husband is liable for his wife's necessaries. It cited as authority, *Samuels v. Hirz,* 189 Pa. Superior Ct. 492, 151 A. 2d 640 (1959), which was an action in assumpsit to collect from a widower the expenses of the last illness of his wife. This case is not authority for a court to enter an order in a support action for the payment of a wife's necessaries contracted for and received prior to the entry of the order. Whether the husband is liable for these medical bills is not here de-

---

[4] *Commonwealth ex rel. Voltz v. Voltz,* 168 Pa. Superior Ct. 51, 54, 76 A. 2d 464 (1950). See also *Commonwealth v. Shavinsky,* 180 Pa. Superior Ct. 522, 119 A. 2d 819 (1956).

cided,[5] but we do hold that the court below could not order these bills paid in a support action. This Court has said "We are of the opinion, however, that the court in this proceeding was not warranted in ordering the husband to pay the money owing by the wife to the hospital and physician. An order of support is for the purpose of covering the wife's necessities and the husband is not liable for indebtedness she may have incurred. A support order is presumed to be all inclusive and is for the purpose of providing the wife with money so that she can pay for the necessities furnished to her." *Commonwealth v. Surovitz,* supra, 148 Pa. Superior Ct. 342, 347, 25 A. 2d 761 (1942).

It is the custom of the court of at least one county to include in its support orders a direction to the *father* to pay the future medical expenses of his children. We have affirmed such orders. *Commonwealth ex rel. Warner v. Warner,* 194 Pa. Superior Ct. 496, 168 A. 2d 755 (1961); 198 Pa. Superior Ct. 124, 130, 143, 181 A. 2d 888 (1962). We refused, however, to allow a court to enter a support order for a child which the court made higher than normal in order to permit the mother to accumulate funds for the child's future medical expenses. *Commonwealth ex rel. Pagel v. Pagel,* 175 Pa. Superior Ct. 32, 100 A. 2d 117 (1953).

Our attention has been called to no case where an order which includes a direction to pay the future "Professional Fees to Doctors" for services to the defendant's wife was affirmed by our Appellate Courts. In this case the professional fees of two psychiatrists for treating the defendant's wife for a period of less than five months was $1575. This demonstrates the hopelessness of applying the one-third rule to an order directing the payment of the wife's medical bills. (The

---

[5] See *Bickerton v. Tanney,* 167 Pa. Superior Ct. 219, 220, 74 A. 2d 760 (1950), for suit in assumpsit for necessaries furnished to wife by a third person *up to the time of the order.*

one-third rule does not apply to support orders for children. See *Commonwealth ex rel. Warner v. Warner*, supra, 198 Pa. Superior Ct. 124, 132, 181 A. 2d 888 (1962); *Commonwealth ex rel. Binney v. Binney*, 146 Pa. Superior Ct. 374, 379, 22 A. 2d 598 (1941)).

The order directing the defendant to "Pay Professional Fees to Doctors," must be stricken.

The order directing the payment of "Gardening Bills and maintain car for wife" must also be stricken as too indefinite. The amount involved in the future cost of gardening and maintaining a car is subject to uncertainty. If the court intended the amount to be the same as that paid by the defendant for these expenses in the past, it could have included the sum in the money order, and if it expected the sums to vary, the reasonableness of each item could well be a matter of endless bickering resulting in useless waste of the time of one of the Commonwealth's busiest courts. In *Commonwealth ex rel. Spitzer v. Spitzer*, 192 Pa. Superior Ct. 441, 446, 161 A. 2d 632 (1960) we said, "There is always the advantage of certainty in an order to pay cash."

The order also directs the defendant to pay the electric and gas bills, presumably of the Brocklehurst Street house being occupied by the wife. Such orders are generally not advisable. They are uncertain in amount. They become a source of bickering. They compel the defendant to pay for the possible extravagant use or waste of the utilities by the wife. They make it more difficult for the court officials to ascertain the amount of delinquency in the support orders. Failure of the husband to pay for the utilities can result in turning off the services to her home without warning. See *Commonwealth ex rel. Zehring v. Zehring*, 186 Pa. Superior Ct. 393, 142 A. 2d 397 (1958). Because we give broad discretion to the courts below on support orders, and because we recognize that there may be

cases where it is advisable to order payments directly to the one furnishing goods or services, we do not ordinarily disturb such orders. See *Spitzer v. Spitzer,* supra, 192 Pa. Superior Ct. 441, 446, 161 A. 2d 632 (1960). Since we are modifying the order here and are satisfied that such orders are generally not advisable, we are striking out the directive to pay the electric and gas bills. We are not holding that such orders are never justified.

The order directs the defendant to pay the mortgage, taxes and insurance on the Philadelphia home in which the wife is residing. Title to this property is in the name of both the husband and the wife. Part of these payments benefit the wife and part benefit the husband. It is better for the payments to be made by one person. Although the taxes and insurance may vary, the payments are fairly constant. It is often advisable to direct such payments as a part of the order, and it is frequently done by the courts below. We have approved these orders. *Commonwealth v. Doughty,* 187 Pa. Superior Ct. 499, 511, 144 A. 2d 521 (1958).

A substantial part of the evidence is given to the mental condition of the wife and her needs. She is in a highly nervous condition. She had been hospitalized for some time during the six months prior to the hearing. She requires a practical nurse to look after her while she is at her home where she would otherwise live alone. The order provides for the payment of ". . . $145 per week (including $94.50 per week for Nursing Care) to Wife." This addition to the weekly order concerning the nursing care is unnecessary. It is the type of provision which would lead to uncertainty and bickering were there to be a slight change in nursing cost. We are striking the part within the parentheses.

By eliminating from the order the direction to pay the electric, gas, and gardening bills and maintaining the wife's car, we have eliminated monthly payments

estimated by the court in its opinion to be $145.50, or approximately $33.50 a week. By eliminating the direction to pay doctor bills, we have eliminated a payment that could vary from a few dollars a month to over $300 a month (at the rate established during the five months prior to the hearing). The order directs the defendant to pay the mortgage, taxes and insurance on the Philadelphia home, half of which enures to his benefit. Charging an approximate payment of $50 a month to the wife brings the part of the order not heretofore eliminated to less than $160 a week.

We shall assume that the defendant will continue to pay the mortgage, taxes and insurance on the Atlantic City house and that, half of this, roughly $600 a year, will enure to the benefit of the wife. The evidence shows that the wife took assets from a joint safe deposit box within a few years of the separation of the amount of $4,000, according to her testimony and in excess of $12,000, according to the defendant's testimony. These facts must be considered in setting the amount of the order.

Under all the evidence, we think the cash order should be $160 per week, which with the payment of the mortgage, tax and insurance on the home in which the wife is residing will constitute an annual cost to the defendant of less than $9000 a year.

There is no rule that the order for a wife's support must or should be one-third of the husband's earning capacity. *Commonwealth ex rel. Taylor v. Taylor,* 193 Pa. Superior Ct. 519, 523, 165 A. 2d 394 (1960) ; *Commonwealth ex rel. Weible v. Weible,* 159 Pa. Superior Ct. 290, 291, 292, 48 A. 2d 161 (1946). The rule is that it should not exceed one-third of the earning capacity. Considering the needs of the wife in this case and all the other circumstances which bear upon the proper sum to be paid by the husband, we think that the order should be close to the permitted maximum.

As said by Judge STOUT, speaking for the court below, "A wife, unlike an old car, cannot be discarded when in need of extensive repair. No reason in law, logic or morality compels a woman, who has given almost 37 of her 55 years exclusively to her husband, to suffer from lack of that care and comfort when she is no longer useful mentally or physically while he and their son live, ride, fly and sail in comfort, behind a corporate veil."

The order is amended to read, "And now, July 25, 1962, defendant is ordered to pay mortgage, taxes and insurance on Brocklehurst Street home, and to pay $160 per week to wife," and as modified, it is affirmed.