363 A.2d 1307
**Thelma W. WECHSLER, Appellee,**

v.

**Irving A. WECHSLER, Appellant (two cases).**

Superior Court of Pennsylvania.

Argued April 16, 1976.

Decided Sept. 27, 1976.

John L. Bailey, Pittsburgh, for appellant in No. 313.

Robert Raphael, Pittsburgh, for appellee in No. 313.

John L. Bailey, Pittsburgh, for appellant in No. 591.

Frederick N. Frank, Pittsburgh, for appellee in No. 591.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant contends that the lower court's award of alimony pendente lite and counsel fees was erroneous because 1) the award of counsel fees to appellee was excessive; 2) husband and wife continued to reside in the same house and appellant did not willfully deny his wife the necessities of life; 3) the lower court miscalculated the appellant's net spendable income; and 4) the lower court required appellant to pay all residential, medical, dental, automobile, and country club expenses attributable to appellee rather than impose a cash order.

Appellee filed an action in divorce against appellant on September 10, 1975. While the divorce suit was pend-

ing, the parties maintained a common residence. Appellant paid all the expenses on the residential property and all his wife's automobile, country club, medical and dental expenses. Moreover, appellant gave appellee $100 a week; she used this money to operate the household. On October 2, 1975, appellee filed a petition for alimony pendente lite, counsel fees and expenses, and a hearing was held on October 29, 1975. On November 24, 1975, the trial court ordered appellant to pay appellee $1,800 per month and directed him to continue to pay the medical, dental, automobile, and country club expenses incurred by appellee, as well as the expenses spent on the common residence. The trial court estimated that the total alimony pendente lite owed by appellant could amount to $2,300 per month. Moreover, the court ordered appellant to pay his wife $1,500 for preliminary counsel fees. This appeal followed.

Appellant's first contention is that the lower court's award of $1,500 counsel fees was excessive. Appellant alleges that the standard practice in Allegheny County is for the trial court to enter an award of preliminary counsel fees in the amount of $200. The legal principles governing the award of counsel fees are well-defined and straightforward. Reasonable counsel fees are to be paid a spouse in order to "promote the administration of fair and impartial justice by placing the parties on a par in defending their rights." *Moore v. Moore,* 198 Pa.Super. 349, 354, 181 A.2d 714, 716 (1962). When a wife seeks counsel fees in an action to gain alimony pendente lite, the trial court should consider the following factors: the value of counsel's services, the wife's necessities, the husband's ability to pay, and the character, situation, and surroundings of the parties. *Merlin v. Merlin,* 203 Pa.Super. 16, 198 A.2d 362 (1964); *Cox v. Cox,* 187 Pa.Super. 177, 144 A.2d 458 (1958); *Campana v. Campana,* 186 Pa.Super. 472, 142 A.2d 169 (1958); *Morgan v. Morgan,* 171 Pa.Super. 625, 91 A.2d 295 (1952).

A trial court possesses a wide range of discretion in fixing an appropriate amount of counsel fees; an appellate court will not modify a lower court's award unless there has been a manifest abuse of discretion. *Kayaian v. Kayaian,* 223 Pa.Super. 103, 297 A.2d 136 (1972); *Wargo v. Wargo,* 191 Pa.Super. 10, 155 A.2d 423 (1959). The record indicates that appellee's counsel informed the court that the services he performed prior to and including the hearing would require a fee of $1,055. Preliminary counsel fees for anticipated legal services were also requested. The trial court stated, and appellant does not deny, that appellee's counsel is a well respected practitioner in the field of domestic relations. In light of the services already rendered, the reputation of counsel, appellant's ability to pay, and the situation and surroundings of the parties, the lower court's award of $1,500 counsel fees cannot be said to be an abuse of discretion.

Appellant's second contention is that alimony pendente lite should not be granted when the parties are living in the same house unless the petitioner can demonstrate a willful denial of necessities by the respondent. Our Court has affirmed awards of alimony pendente lite despite the continued co-residence of the parties. See *Kordich v. Kordich,* 182 Pa.Super. 132, 125 A.2d 471 (1956); *Homler v. Homler,* 120 Pa.Super. 66, 181 A. 840 (1936). This result is sensible in light of the purpose of alimony pendente lite. "Alimony pendente lite is payable to a wife after the commencement of a divorce action for the purpose of providing her with an income during pendency of the action in order that she may not be put at a disadvantage financially by reason of her having brought the action or being required to defend it." [1]

1. Until 1974, alimony pendente lite and reasonable counsel fees and expenses were only available to a wife. Act of May 2, 1929, P.L. 1237, § 46; Act of May 25, 1933, P.L. 1020, § 1; Act of Aug. 14, 1963, P.L. 1065, No. 462, § 1; Act of Oct. 19, 1967, P.L. 451, No. 207, § 1, 23 P.S. § 46 (1955), as amended Act of June 27, 1974, P.L. 403, No. 139, § 1, imd. effective, 23 P.S. § 46 (Supp.1976). Con-

*Kordich,* supra, at 134, 125 A.2d at 472. See also *Jeffrey v. Jeffrey,* 228 Pa.Super. 64, 296 A.2d 873 (1972). In determining whether this disadvantage exists, the trial court should consider the following factors; the husband's ability to pay, the separate estate and income of the wife, and the character, situation and surroundings of the parties. *Jeffrey v. Jeffrey,* supra; *Gangloff v. Gangloff,* 163 Pa.Super. 570, 63 A.2d 115 (1949); *Homler v. Homler,* supra. *See generally* Freedman, *Law of Marriage and Divorce in Pennsylvania,* §§ 452–53 (1957). Continued co-residence is relevant to the situation and surroundings of the parties, but this fact alone cannot preclude the trial court from ascertaining the existence and extent of any financial disadvantage. Nor is it relevant whether a husband willfully or negligently denies his wife the necessities of life if an award of alimony pendente lite would be appropriate under the above tests.[2]

sequently, courts have defined the standards governing alimony pendente lite and counsel fees and expenses in language focusing on the husband's ability to pay and the wife's right to recover. In response to the Pennsylvania Equal Rights Amendment, Pa.Const. Art. 1, § 28 (Supp.1976), the legislature amended the applicable statute to make alimony pendente lite and counsel fees and expenses available to both husband and wife. Act of June 27, 1974, Pub.L. 403, No. 139, § 1, 23 P.S. § 46 (Supp.1976). Because the instant case involves a petition for alimony pendente lite filed by a wife against her husband, it is appropriate to quote the traditional legal maxims without substituting gender-free words for "husband" and "wife." It must be remembered, however, that the standards articulated in this Opinion are now equally applicable when a husband seeks alimony pendente lite and reasonable counsel fees from his wife.

2. Appellant cites *Commonwealth v. George,* 358 Pa. 118, 56 A.2d 228 (1948), as support for the contention raised above. This reliance is misplaced. In *George,* a support case, the Supreme Court found that the husband was adequately supporting his family in light of his earning capacity, income, property, and his family's condition in life. Therefore, the trial court had no power to issue a support order. The Supreme Court did not end its inquiry once it appeared that the parties were living in the same house. Instead, it canvassed the traditional factors that should be considered in fixing a support order. Similarly, in the case at bar, we must determine whether an award of alimony pendente lite is justified in light of the husband's income, the separate estate and income of the wife and the character, situation, and surroundings of the parties.

■ Appellant's third contention is that the trial court erred in computing his net spendable income. Mr. Wechsler is a senior partner in a prosperous accounting firm. He has an unlimited right, to the extent of his interest, to draw on the partnership's accounts and profits. Moreover, appellant enjoys many of the perquisites to which people successful in business are accustomed: the firm pays his expenses for lunches, entertainment, cars and country club dues. While the trial court correctly noted that appellant has total assets of at least $765,532, it premised the award upon its computation of appellant's net monthly income. Therefore, it is necessary to consider how the trial court arrived at its estimate of net monthly income.

Appellant reported adjusted gross income of $105,022.-97 on his 1974 federal income tax return. According to the trial court, federal and state taxes reduced spendable income to $84,675.87. Using this figure, the court calculated appellant's net monthly income at $7000. Appellant charges that his net spendable yearly income was in reality approximately $35,000. Appellant derives this figure by subtracting the following items from the trial court's estimate of $84,675.87: (1) an additional tax liability of $2,926.90, (2) interest payments of $43,454, and (3) charitable contributions of $2,500.

Appellant's most serious challenge to the trial court's computation is that the court ignored interest payments of $43,454 made in 1974 and stock margin calls of $78,000 on appellant's account. If these expenses had been fully credited by the trial court, it is readily apparent that the lower court's award of $1,800 plus the above enumerated expenses would be grossly excessive. Appellant would be ordered to pay as much as $27,000 per year to appellee on a yearly spendable income of about $40,000. Appellant's own testimony indicates that the financial burdens of high interest charges and stock calls could be eliminated immediately if he were to sell his stock. Such a transaction would not result in a financial loss for ap-

pellant. The trial court did not expressly articulate its reasons for not crediting the interest payments and stock calls to appellant, but it apparently expected appellant to liquidate his holdings. This reasoning, however, suffers from a fundamental flaw: if appellant nullified his interest expenses by selling all his stock, he would lose his federal tax deduction of $43,454. Appellant testified that he pays about fifty cents per taxable dollar to the federal government. Consequently, the loss of the interest deduction would cause his federal taxes to increase by more than $20,000. Similarly, if appellant had not paid $2,500 in charitable contributions in 1974, his federal taxes would have increased by about $1,250. Finally, undisputed evidence in the record makes it clear that appellant incurred an additional tax liability of $2,926.90 in 1974. The trial court improperly ignored this amount in making its computations.

We must now determine if these errors are so significant as to require reversal. An award of alimony pendente lite should not substantially exceed one-third of the husband's income from his property and labor. *Kordich v. Kordich,* supra; *Gangloff v. Gangloff,* supra; *Gould v. Gould,* 95 Pa.Super. 387 (1929). If the lower court observes this maximum limit in fixing its award, an appellate court will not reverse unless the trial court has manifestly abused its discretion. *Kordich v. Kordich,* supra; *Gangloff v. Gangloff,* supra; *Mather v. Mather,* 143 Pa.Super. 608, 18 A.2d 492 (1941). If we assume that appellant eliminates his interest expenses and charitable contributions, his federal tax liability would increase from $17,600 to about $40,000.[3] Additional state and local taxes would consume about $6,000 of his income. After subtracting these potential liabilities from his ad-

---

3. The trial court based its calculations on the parties' joint 1974 federal income tax return. We do likewise. Of course, the trial court on remand is free to consider any available updated information concerning appellant's income and expenses.

justed gross income of $105,022.97, appellant's net spendable yearly income would be about $60,000 and his net monthly income would be about $5,000. The trial court's estimated award of $2,300 per month would substantially exceed one-third of the husband's net monthly income. Therefore, we conclude that the lower court abused its discretion and that a reversal is necessary.

Although our Court has the power to directly modify an award of alimony pendente lite, Act of July 31, 1970, P.L. 673, No. 223, art. V, § 504; 17 P.S. § 211.-504 (Supp.1976), this case involves factual and financial complexities which make an exercise of such power inadvisable. Therefore, we remand for lower court reconsideration. See *Commonwealth ex rel. Levy v. Levy*, Pa. Super., 361 A.2d 781 (1976). On remand, the trial court, at a minimum, must consider the additional $2,926.00 in nonfederal taxes and the potentially greater federal tax liability in recomputing appellant's net monthly income. In arriving at an accurate estimate of appellant's true net monthly income, the trial court may find it helpful to take additional testimony concerning appellant's partnership arrangements. "The net income of a defendant as shown on income tax returns is not to be accepted in a support case as the infallible test of his earning capacity." *Commonwealth v. Miller*, 202 Pa.Super. 573, 577, 198 A.2d 373, 375 (1964); *Commonwealth ex rel. Gitman v. Gitman*, 428 Pa. 387, 237 A.2d 181 (1968); *Commonwealth ex rel. Gutzeit v. Gutzeit*, 200 Pa.Super. 401, 189 A.2d 324 (1962). This is especially so when the defendant is in business for himself. *Commonwealth ex rel. Goichman v. Goichman*, 226 Pa.Super. 311, 316 A.2d 653 (1973); *Commonwealth ex rel. Kaplan v. Kaplan*, 219 Pa.Super. 163, 280 A.2d 456 (1971). For example, appellant concedes that he enjoys an unlimited right to draw on the partnership account to the extent of his interest. Partnership tax returns may prove helpful in determining whether appellant's earning capacity substantially

exceeds the amount he actually withdraws from the partnership. Furthermore, more recent information concerning the relative financial situation of the parties may be available to the trial court. Finally, the court below should reconsider that portion of its order which directs appellant to continue to pay residential, medical, dental, automobile, and country club bills attributable in whole or part to appellee. Although we recognize that there may be cases in which it is advisable to order payments directly to the supplier of goods or services, cash orders are generally preferable. *Commonwealth ex rel. Gutzeit v. Gutzeit,* supra. *See also Commonwealth ex rel. Spitzer v. Spitzer,* 192 Pa.Super. 441, 161 A.2d 632 (1960).

Order reversed and remanded for reconsideration in conformity with this Opinion. All proceedings are stayed pending disposition by the lower court.[4]

VAN der VOORT, J., concurs in the result.

JACOBS and PRICE, JJ., dissent.

4. On December 2, 1975, the lower court received the writ of certiorari from the Superior Court. On December 10, 1975, appellant filed a petition for supersedeas which was denied by the lower court. On January 22, 1976, appellee instituted proceedings to have appellant held in contempt. Appellee filed a praecipe for judgment in the amount of $5,600, an affidavit of default, and a praecipe for writ of execution on February 20, 1976. A request for a stay of execution directed to this Court was consolidated with the appeal from the order of November 24, 1975 of the Court of Common Pleas of Allegheny County, Family Division, at No. 1314 October Term, 1975. In view of our disposition of appellant's claims in the latter appeal, it is only proper that we stay all proceedings until the lower court has an opportunity to reconsider its award in conformity with this opinion.