426 A.2d 1184

**Beverly SMITH**

v.

**William B. SMITH, Appellant.**

Superior Court of Pennsylvania.

Argued June 11, 1980.

Filed March 13, 1981.

148

Barry M. Miller, Norristown, for appellant.

William Kinsley, Philadelphia, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

Presently before us is appellant William B. Smith's appeal from the order of support of the lower court dated March 27, 1979.[1]

The Order directed appellant to pay: (a) $75 a week for the support of appellee-wife; (b) $35 a week for the support of his minor son who resides with the appellee; (c) the mortgage, taxes and insurance on the parties' entireties property (appellee and the minor son reside therein); (d) the electric and/or oil and gas bills on said entireties' property; and (e) $15 a week arrearages which may be liquidated from the time of the entry of a temporary order of support dated November 14, 1978.

We affirm the subsections of the appealed-from order identified above as (a), (b), (c) and (e) and will remand subsection (d).

Appellant raises five issues on appeal: (1) that appellee did not meet her burden of establishing her "needs" and those of her nine-year old son; (2) that in making its order, the lower court failed to consider appellee's "earning capaci-

---

1. Appellant also filed a petition for a special allowance of supersede-as which was denied by this court, per curiam, on May 16, 1979.

ty"; (3) that the lower court erred in ordering appellant to pay the actual monthly expenses (e. g. a mortgage, taxes, insurance, electric and/or oil and gas) on the parties' entireties property in which appellee and the minor son reside. Appellant contends that this portion of the order lacks requisite specificity, is too indefinite, and places the appellant in a position of financial uncertainty.

We have reiterated our statement found in *Commonwealth ex rel. Hartranft v. Hartranft*, 267 Pa.Super. 572, 574, 407 A.2d 389 at 390–1 (1979) that:

> Our scope of review is limited to a determination as to whether the order of support can be sustained on any valid ground. *Marvin v. Marvin*, 193 Pa.Super. 179, 164 A.2d 128 (1960). We must determine whether there was sufficient evidence to sustain the lower court or contrariwise whether the lower court was guilty of an abuse of discretion. A finding of abuse of discretion is not lightly made; but only upon a showing of clear and convincing evidence. *Com. ex rel. McQuiddy v. McQuiddy*, 238 Pa.Super. 390, 358 A.2d 102 (1976); *Com. ex rel. Caplan v. Caplan*, 236 Pa.Super. 605, 346 A.2d 822 (1975); *Com. ex rel. Halderman v. Halderman*, 230 Pa.Super. 125, 326 A.2d 908 (1974).

> In reviewing the lower court's action to determine whether an abuse of discretion has occurred, we recognize that " '[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' " *Com. ex rel. Levy v. Levy*, 240 Pa.Super. 168, 177, 361 A.2d 781, 785 (1976).

At hearing, appellant testified that he is a (50%) shareholder in the Jenkinstown Garage servicing the Jenkinstown, Pennsylvania area. Other than the sale of gasoline and related products, his business performs state inspections and complete automotive repairs. Appellant's accountant testified that for the fiscal year ending June 30, 1978 the

Jenkinstown Garage reported gross revenues of $338,871.00, of which $240,189.00 was attributable to gasoline sales. Appellant testified that he and his partner's gross weekly salary from the business is $275.00 and that he and his partner set their own salaries. In addition, appellant testified that he receives $440.00 per month from the rental of two houses and two of four semi-detached garages.[2] Title to these rental properties is in the names of both appellant and appellee.

Contrariwise, appellee testified that of her own personal knowledge, her husband's business income was substantially greater than a gross of $275.00 per week. She testified that both the appellant and his partner receive substantial unreported cash payments related to their service business. To document same, she testified that in contemplation of a permanent move to Arizona because of her poor health, she and her three children (the two daughters are presently in the general custody of the appellant) visited Arizona for an 8-month period spanning 1976 and 1977, and during that time her husband sent her all of his net reportable income and additional funds exceeding $1,000.00. During that same period, the parties' banking records reflect that the appellant deposited an additional $7,740.00 into a joint checking account.[3] During that eight-month span, the appellant flew to Arizona on three separate occasions to visit his family.

Appellant testified that he is paying approximately $1,200.00 per year towards his daughter's college education and that during the Christmas vacation period immediately prior to hearing, he had taken his three children to Disneyworld, Florida for a ten-day period, but had spent a total of only $400.00 on that vacation. Appellant also confirmed that he owns a few cars, a motorcycle and a small sailboat.

Appellant testified that he and his wife had paid $22,000.00 for their entireties' residence which he estimated to

2. The other two garages, appellant keeps for personal use.

3. Appellant testified that those additional monies represented his receipt of insurance benefits, the majority of which he had never disclosed to the appellee.

be worth approximately $50,000.00; that he and his wife paid $13,000.00 for the two jointly-owned rental properties with four garages which he estimated to be worth $60,-000.00–$70,000.00, and that in 1970 he and his business partner had paid $50,000.00 for the business property.

In its opinion, the lower court concluded that appellant's testimony concerning his limited income was unworthy of belief; rather, that the evidence revealed that appellant's net income after taxes was in excess of $500.00 per week; and that appellant had income well in excess of that which he had reported and to which he testified. The lower court apparently concluded that the parties' previous lifestyle, the parties' joint and appellant's individual accumulation of real estate; appellant's blatantly evasive and erroneous answers to certain questions and appellant's known expenditures, all contributed to the court's independent finding as to appellant's real income. For instance, appellant testified that his garage employed one other person while his accountant confirmed the fact that there were five or six other employees. Appellee testified that she helped her husband at the garage on a daily basis prior to her 8-month removal to Arizona. It was during that period she obtained first-hand knowledge of her husband's business affairs. Appellant specifically stated that his wife never helped him at the station. He claimed that "she was too busy hitting the shopping centers." (R. 206a)

The lower court did not believe appellant's testimony concerning his alleged limited income. Nor do we.

The trial court's determination of appellant's income is within its province. It has been held by this court on numerous occasions that a lower court's refusal to rely on income tax returns does not constitute an abuse of discretion. As was stated in *Com. ex rel. Naselsky v. Naselsky*, 199 Pa.Super. 270, 184 A.2d 288, at 289 (1962):

When a defendant operates a business of his own, it is frequently difficult to determine his actual income. The

court need not accept as accurate the testimony of the defendant nor the financial record of his accountant made from information furnished by the defendant. It could make its own deductions from the evidence and the accompanying circumstances. *Com. ex rel. Crandall v. Crandall*, 145 Pa.Super. 359, 393, 21 A.2d 236 (1941); *Williams v. Williams*, 175 Pa.Super. 400, 413, 104 A.2d 499 (1954).

The defendant was a businessman who, the court found, was able to accumulate substantial amounts of cash for the payment of bills. It would serve no useful purpose to detail the evidence.

The above principle was again affirmed in *Commonwealth v. Miller*, 202 Pa.Super. 573, 198 A.2d 373 at 375 (1964),

The net income of a defendant as shown on income tax returns is not to be accepted in a support case as the infallible test of his earning capacity. Particularly is this true where the defendant is in business for himself and is allowed substantial business "expenses", items of depreciation and sundry other deductions which enable him to live luxuriously before spending his taxable income.

and reaffirmed in *Com. ex rel. Goichman v. Goichman*, 226 Pa.Super. 311, 316 A.2d 653, at 656 (1973).

We therefore conclude that the lower court did not abuse its discretion in its determination of appellant's income.

■ The record also supports the lower court's implicit findings that the appellee proved her "needs" and those of her dependent 9-year old son. As is the custom in many counties, as was the case here, the appellee, prior to hearing, was required to submit a schedule of monthly expenditures. In fact, appellee's monthly expenditures, as stated, far exceeded the order of support issued. That is not particularly unusual, however, for:

In support cases neither the inflated demands by the wife for "necessary" expenses, nor the defendant's testimony of his pathetic financial plight constitutes a sound base

upon which to rest an order. . . . The real problem is to determine as accurately as possible the earning capacity of the defendant, which is often difficult and in many cases only an estimate.

*Miller*, supra, 202 Pa.Super. 375, 198 A.2d 373. We therefore conclude that the appellee satisfied her burden of establishing her needs and those of her 9-year old son.

Appellant also contends that the lower court abused its discretion in failing to consider appellee's "earning capacity" as contrasted with her then earnings. At the time of the hearing, appellee was unemployed, was not receiving any sort of compensation, and had no income. She had testified, however, that during the year prior to hearing, she held two (2) different jobs, the last one being in the Bookkeeping Department of a restaurant which paid her $106.00 per week net. It lasted but six (6) weeks. Her first job had been on a part-time basis.

The lower court reviewed the notes of testimony and accepted the appellee's statement that at the time of the hearing, she was unable to work and adequately care for her 9-year old son due to multiple physical problems including asthma, phlebitis, a kidney condition, lupus and emphysema. This conclusion is sustained by the record.

The fourth and fifth issues raised on appeal are inexorably intertwined and therefore will be discussed together. Appellant claims that the order of support is punitive and confiscatory. The law in this regard has recently been clearly stated in *Kurpiewski v. Kurpiewski*, 254 Pa.Super. 489, 494, 386 A.2d 55 at 58 (1978):

Consequently, a support order cannot be confiscatory but must secure a reasonable living allowance, considering the supporting spouse's earning capacity and property and the parties' station in life. *Commonwealth ex rel. Bishop v. Bishop*, 234 Pa.Super. 600, 341 A.2d 153 (1975); *Commonwealth ex rel. Malizia v. Malizia*, 229 Pa.Super. 108, 324

A.2d 386 (1974); *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973).

The order provided in relevant part (issue No. 5) for appellant to pay the *mortgage, taxes and insurance* on the entireties' property in which the appellee and the minor son reside, as well as the *electric and/or oil and gas bills*.

■ Although not generally favored, this court on numerous occasions has affirmed lower court orders directing appellants to make mortgage, real estate tax and insurance payments on marital properties on the basis that these payments are generally fairly constant and because a portion of these payments benefit both husband and wife. See *Com. v. Doughty*, 187 Pa.Super. 499, 144 A.2d 521 (1958), and *Commonwealth ex rel. Gutzeit v. Gutzeit*, 200 Pa.Super. 401, 189 A.2d 324 (1963). We therefore affirm that portion of the order of the lower court directing the appellant to make direct payments on account of the mortgage, taxes and insurance for the property at 215 Runnymeade Avenue.

■ However, we must remand that portion of the order directing appellant to pay the electric and/or oil and gas bills on that property. We feel that an order of an unspecified and variable amount, such as will likely occur if we permit this portion of the order to stand, is, by logical extension potentially both punitive and confiscatory. It places the appellant in a position of financial uncertainty. Moreover, it may become a source of additional bickering between the parties; and it may compel the appellant to pay for the possible extravagant use or waste by the appellee (see *Gutzeit*, supra, 200 Pa.Super. 401, 189 A.2d p. 329). Therefore, we remand only that portion of the order dated March 27, 1979, which directs appellant to pay "electric and/or oil and gas bills" with instructions that a prompt hearing be held so that the court may make an appropriate substitution of a sum certain in lieu of its earlier directive that the appellant pay the electric and/or oil and gas bills.

Affirmed in part and remanded in part.