448 A.2d 547

Rose BONI

v.

John BONI, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed June 25, 1982.

Sandor Engle, Allentown, for appellant.

James F. Menconi, Tamaqua, for appellee.

Before HESTER, CAVANAUGH and VAN der VOORT, JJ.

HESTER, Judge:

In this case, the Husband, John Boni, has appealed an order of the Court of Common Pleas of Carbon County, of

March 12, 1980, which requires the Husband to pay $475.00 per week for the support of his Wife, Rose Boni, and their four minor children. The order also requires the Husband to continue to pay the mortgage, insurance, taxes, and repairs for the parties' jointly-owned residence, at which the Wife is living.

The parties were married in 1963 and separated in September of 1978. The Wife is unemployed and is a full-time homemaker. She owns an apartment house in New York which was purchased for $80,000, but apparently produces no income.

The Husband is a one-half owner and manager of a sewing contracting business, known as Pam Sportswear. He formerly owned this Company with his brother-in-law (Wife's sister's husband); but, because of the family strains resulting from the separation, Husband bought out his brother-in-law's one-half interest in September of 1979.

The parties each own a one-quarter interest in a horse farm known as Mahoning Valley Stables, which the lower court valued at $175,000.00. The lower court valued the jointly-owned residence at $99,000.00, based upon its initial cost plus the cost of improvements.

In order to buy out his brother-in-law, the Husband borrowed money from other third persons; and, in exchange, issued to those persons 50% of the stock of the Company. The lower court valued the Husband's then present 50% interest in the Company at $138,000.00, which is what Husband paid to buy out his brother-in-law on September 30, 1979. The lower court stated:

"Because this was a bona fide, arms length transaction between equal partners, the money paid out by the [Husband] to [the brother-in-law], in the Court's opinion, accurately demonstrate(s) the fair market value of the [Husband's] 50% interest in the corporation and we so found."

Husband owns at least a one-half interest in the property upon which the sewing factory is located, which the lower court valued, including renovations and improvements, at

$370,000.00.[1]  Accordingly, the lower court valued Husband's interest in this property at $185,000.00.

The lower court concluded that, as of the hearing date, the Husband had a net worth of $433,251.00, itemized as follows:

| ASSET | VALUE |
|---|---|
| Pam Sportswear, Inc.-<br>50% stock ownership | $138,000.00 |
| Weissport factory property--<br>½ interest | 185,000.00 |
| Mahoning Valley Stables at<br>cost of $175,000.00--<br>¼ interest | 43,750.00 |
| Residence at cost--<br>½ interest | 49,900.00 |
| Certificates of Deposit in<br>the name of Husband and his<br>Mother or Husband alone | 16,601.00 |
| TOTAL NET WORTH | $433,251.00 |

In 1979, Husband's income tax return reflected total income before taxes in the amount of $34,875.00, including $23,250.00 in wages from the Company and $10,000.00 in management fees.  In 1979, Husband also reported $18,-397.00 in capital gains resulting from the sale of his ½ interest in an apartment building which he formerly owned jointly with the brother-in-law.

The lower court specifically stated that it ". . . considered his 1979 earnings but we did not base our order on these earnings."

Husband's 1978 tax return, which he filed jointly with his Wife, reflected that his gross income from the Company was $53,382.00.  The lower court held that this amount ". . . more accurately establishes the [Husband's] earning capacity.  This income was prior to the separation of the parties, at a time when [Husband] had no reason to deflate his

1.  At the time of the hearing, the Husband and the brother-in-law were involved in litigation concerning the ownership of this property.  Husband contended that he owned the entire property, and the brother-in-law contended that he owned ½ of the property.  However, the lower court based its analysis on the assumption that Husband owned only a ½ interest in the property.

income other than for tax purposes and this income was consistent with his affluent standard of living."

At the hearing, Wife presented a monthly expense statement for her and the four children totalling $2,590.00. After review, the court reduced the expenses to $2,200.00 per month, which included the mortgage payment in the amount of $256.00 per month.

Prior to the separation, the parties enjoyed a very high standard of living. Wife testified, without contradiction, that the Husband customarily gave her $400.00 per week to run the home and to care for the children. In addition, Husband paid for all car insurances, utility bills, dental and medical bills, gas for the cars, and tuition for the children in private schools. The parties lived in an elaborate all-brick four-bedroom home. Husband had purchased his Wife a 1975 Continental for $14,000 in cash and a Corvette for himself for $7,000 in cash. The children had 3 motor bikes and a snowmobile. Wife also testified that Husband bought her a diamond ring for $6,000 in November of 1977 and two other rings which he had purchased for $1,000 each.

Based on the above facts and figures, the lower court determined ". . . that a support order of $525.00 per week would be more than fair and reasonable for the support of his Wife and four children." However, the lower court reduced the amount to $475.00 per week, by giving Husband credit for the income-producing trust funds which he had established for his children, whereby each of his children would receive approximately $42.00 a week. *Commonwealth ex rel. Goichman v. Goichman,* 226 Pa.Super. 311, 316 A.2d 653 (1973); *Doelp v. Doelp,* 219 Pa.Super. 420, 281 A.2d 721 (1971).

In arriving at the weekly payment of $475.00, the lower court imputed a 10% per annum interest rate of return on Husband's net worth of $433,251.00. The lower court concluded that this rate of return, ". . . in these times of inflationary interest rates is modest." Therefore, the lower court applied $43,325.00 per year toward the support of the Wife and children, as part of Husband's earning capacity.

The appellant raises three issue on appeal. Although we do not agree with the reasoning of the lower court in arriving at the support order, we, nevertheless, affirm the order, with one modification, because as stated by the lower court, ". . . this order of support is fair and reasonable based upon the standard of living that the [Husband] established and maintained prior to his separation from the family." *Commonwealth ex rel. Roviello v. Roviello,* 229 Pa.Super. 428, 323 A.2d 766 (1974); *McGavic v. McGavic,* 222 Pa.Super. 246, 294 A.2d 795 (1972).

■ "Initially, it is appropriate to observe that the trial court possesses wide discretion as to the proper amount of support payments and, unless surrounding circumstances suggest the court abused its discretion, its judgment will not be disturbed. *Commonwealth ex rel. Berry v. Berry,* 253 Pa.Super. 268, 384 A.2d 1337 (1978); *Weiser v. Weiser,* 238 Pa.Super. 488, 362 A.2d 287 (1976); *Commonwealth ex rel. Caplan v. Caplan,* 236 Pa.Super. 605, 346 A.2d 822 (1975)." *Straub v. Tyahla,* 274 Pa.Super. 411, 418 A.2d 472, 473–4 (1980).

■ "Our scope of review is limited to a determination as to whether the order of support can be sustained on any valid ground. *Commonwealth ex rel. Marvin v. Marvin,* 193 Pa.Super. 179, 164 A.2d 128 (1960). We must determine whether there was sufficient evidence to sustain the lower court or contrariwise whether the lower court was guilty of an abuse of discretion. A finding of abuse of discretion is not lightly made; but only upon a showing of clear and convincing evidence. *Commonwealth ex rel. McQuiddy v. McQuiddy,* 238 Pa.Super. 390, 358 A.2d 102 (1976); *Commonwealth ex rel. Caplan v. Caplan,* 236 Pa.Super. 605, 346 A.2d 822 (1975); *Commonwealth ex rel. Halderman v. Halderman,* 230 Pa.Super. 125, 326 A.2d 908 (1974)." *Straub,* supra, 274 Pa.Superior Ct. 418 A.2d at 474.

"In reviewing the lower court's action to determine whether an abuse of discretion has occurred, we recognize

that '[a]n abuse of discretion is [not] * merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.' *Commonwealth ex rel. Levy v. Levy*, 240 Pa.Super. 168, 361 A.2d 781, 785 (1976)." *Straub*, supra.

■ "In evaluating a spouse's support obligation, the factors to be considered are the spouse's income, potential earning power, and the extent of his property and financial resources. *Commonwealth ex rel. ReDavid v. ReDavid*, 251 Pa.Super. 103, 380 A.2d 398 (1977); *Shuster v. Shuster*, 226 Pa.Super. 542, 323 A.2d 760 (1974). The amount of award must be fair, non-confiscatory, and attendant to the circumstances of the parties. *Commonwealth ex rel. Malizia v. Malizia*, 229 Pa.Super. 108, 324 A.2d 386 (1974); *Commonwealth ex rel. Hauptfuhrer v. Hauptfuhrer*, 226 Pa.Super. 301, 310 A.2d 672 (1973)." *Straub*, supra.

■ The appellant first questions whether it is an abuse of discretion for the lower court to base a support order on an unsubstantiated annual interest rate of return for less than majority interest in non income-producing assets. We agree with appellant that the assets in question, with the exception of the certificates of deposit, can not be reasonably expected to yield a 10% annual interest rate of return.

Husband's 50% interest in Pam's Sportswear, Inc. and the Weissport factory property, although they are valuable assets, cannot be considered as producing a 10% annual rate of return for the Husband. These fixed assets do not directly result in any cash flow for Husband's business. By including these fixed assets as part of Husband's earning capacity, the lower court, in effect, is requiring Husband to either sell or encumber his interest in order to obtain liquid funds for the payment of support.

Under the Divorce Code, Act of April 2, 1980, P.L. 63, Act No. 26, 23 Pa.C.S.A. Section 101 et seq., Wife would seem-

* Printer's Error.

ingly have a claim to these assets by way of an action for equitable distribution, if necessary. However, to require a spouse to liquidate these assets in order to pay support would "kill the goose that lays the golden egg", and would not be in the best long-term interests of the Wife or the children.

■ Similarly, the parties' jointly-owned residence, which the lower court valued at $99,000.00, should not be considered in determining the amount of support because it can not be expected to produce any income to the Husband unless it is sold or further encumbered. In other words, it simply does not reflect Husband's earning capacity.

■ The Mahoning Valley Stables should not be considered as an income-producing asset since, in 1978 prior to the separation of the parties, both Husband and Wife each claimed a tax loss in the amount of $11,496.00 resulting from this asset. Although this loss was really a result of the depreciation of the buildings, the track and the horses and was not an actual out-of-pocket loss to the parties, the Farm, nevertheless, does not actually produce any income for the Husband from which he could pay support. The lower court found that Husband received $1,250.00 per year from the rental of the farm land and $175.00 every other month from the rental of the farm house. However, the record would support Husband's contention that this amount, $2,300.00 per year, was actually used to pay the taxes, insurance, and repairs for the property.

■ The lower court properly included the amount of $16,601.00, in the form of certificates of deposit in Husband's name and the name of his mother or his name alone, as part of Husband's earning capacity. These assets should be considered at the actual annual interest rate of return; but, since these interest rates are not included in the record, we agree that 10% per annum is a "modest" interest rate to be applied to the certificates.

In *Commonwealth ex rel. Gutzeit v. Gutzeit*, 200 Pa.Super. 401, 189 A.2d 324, 326 (1963) this Court stated:

"The assets of a defendant are to be considered in setting the amount of a support order. *Commonwealth v. Surovitz*, 148 Pa.Super. 342, 347, 25 A.2d 761 (1942), but the important consideration here is the earning capacity of the defendant."

In *Commonwealth ex rel. Kallen v. Kallen*, 202 Pa.Super. 500, 198 A.2d 331, 333 (1964), this Court added, ". . . to the husband's professional income a modest return [2] on the value of his capital assets," in order to arrive at a figure for Husband's earning capacity which was more than three times the amount of the support order for the Wife alone.[3]

In *Commonwealth ex rel. Ross v. Ross*, 206 Pa.Super. 429, 213 A.2d 135, 139 (1965), this Court, in determining earning capacity, approved the inclusion of ". . . not only the husband's actual income but also the interest from the $17,-500.00 savings accounts."

On the basis on the above-cited cases, the lower court could consider the Husband's assets, as a factor which reflects his potential earning capacity, but the court could not arbitrarily impute income to these fixed assets at the rate of 10% per annum.

Secondly, the appellant challenges the lower court's failure to consider the financial resources of the Wife in determining the amount of support.

For the reasons stated above, Wife's interest in the Mahoning Valley Stables and the jointly-owned residence were properly not considered by the lower court, since they similarly produce no income to the Wife unless they were to be liquidated or encumbered.

■ Concerning the Wife's interest in the New York apartment building, which the lower court valued at

---

**2.** The "modest return" in *Kallen* was less than 1%.

**3.** The policy in this Commonwealth, that an order of support should not exceed ⅓ of the husband's earning capacity does not apply to support orders for children. *Gutzeit*, supra, 200 Pa.Superior 409–10, 189 A.2d at 329, *Commonwealth ex rel. Warner v. Warner*, 198 Pa.Super. 124, 132, 181 A.2d 888, 892 (1962).

$80,000.00, this asset, although it apparently produces no income to the Wife, must be considered, as a factor indicating Wife's potential earning capacity, to the same extent that the Husband's capital assets are considered. *Conway v. Dana*, 456 Pa. 536, 318 A.2d 324 (1974).

■ The appellant thirdly contends that the lower court abused its discretion by basing Husband's present earning capacity on past, rather than present, income. We disagree.

The lower court based its determination of Husband's earning capacity on his 1978 income from Pam's Sportswear in the amount of $52,382.00. Although it is possible that the business lost money as a result of the buy-out of the brother-in-law and the subsequent re-sale of a 50% interest and indebtedness to third parties, it was not an abuse of discretion for the lower court to base Husband's earning capacity on his 1978 income. Husband is operating a successful business, which has fixed assets and goodwill of substantial value. Husband can, in effect, control the amount of his income by setting his own salary. He also has the advantage of deducting many of his expenses through the corporation.

In *Gutzeit*, supra, this Court considered the husband's ability to control his own salary, the value of his assets, including his successful, solely-owned corporation, as well as the other benefits which husband derived from the corporation in determining that the husband's earning capacity was nearly twice as much as his annual average salary. 200 Pa.Superior 408, 189 A.2d at 327.

In *Ross*, supra, this Court disapproved the consideration of the husband's past earnings in determining his present earning capacity, since the husband was 65 and retired from his job. 206 Pa.Superior 432–33, 213 A.2d at 137. Clearly, *Ross*, supra, is distinguishable from the facts of the instant case, since the Husband is still actively managing his successful business.

Accordingly, the lower court properly considered Husband's 1978 income in determining his earning capacity

along with the "income which can be reasonably earned from capital assets". *Kallen,* supra, 202 Pa.Superior 502, 198 A.2d at 333.

Based on our review of the record, we conclude that Husband's earning capacity should be set at $60,000.00 per year.

In arriving at the support order, the lower court properly considered the station in life of the parties and the standard of living which the Husband had established for his family, prior to his separation from the Wife. *Commonwealth ex rel. Kallen v. Kallen,* 200 Pa.Super. 507, 190 A.2d 175, 176 (1963), *Ross,* supra, 206 Pa.Superior 434, 213 A.2d at 137; *Roviello,* supra; *McGavic,* supra; *Straub,* supra. Since the Wife and the four children are accustomed to an affluent standard of living, the lower court properly determined the amount of support; and, for this valid ground, we affirm, *Marvin,* supra; *Straub,* supra, except for one modification.

On the basis of the Wife's income and expense statement, the lower court determined that her needs and the needs of her children were $2,200.00 per month, which included the residential mortgage payment of $256.00 per month.

Since the Husband is required to pay the mortgage in addition to the $475.00 per week, he should not, in effect, have to pay the mortgage twice. Accordingly, the expenses of the Wife and four children should be reduced to $1,950.00 per month and Husband's support payment should be reduced to $450.00 per week.[4] *Kravinsky v. Glover,* 263 Pa.Super. 8, 396 A.2d 1349 (1979). The remainder of the lower court's order, as modified, is affirmed.

Therefore, Husband's total support obligation for his Wife and four children, including the payment of the mortgage,

4. $1,950.00 per month divided 4.333 weeks per month equals $450.00 per week. Based upon our review of all of the circumstances in this case, Husband is not entitled to a full dollar-for-dollar reduction for the amount of the mortgage. $1,950.00 per month accurately reflects the expenses of Wife and the four children. Husband must continue to support the standard of living which he established for his family prior to the separation. On the basis of all of the factors and considerations stated herein, this amount is fair and reasonable.

taxes, and insurance for the jointly-owned residence is $27,-672.00 per year[5], plus the cost of repairs to the residence, all of which should be less than ½ of his earning capacity. The lower court's order is prospectively modified, as follows, and is otherwise affirmed:

1. The appellant, JOHN BONI, shall pay the sum of $150.00 per week for the support of ROSE BONI, the appellee-wife, and $300.00 per week for the support of ALDO BONI, d/o/b 2/16/64, PAT BONI, d/o/b 2/10/69, TONIA BONI, d/o/b 2/25/73 and LORENA BONI, d/o/b 2/7/74, the children of the appellant.

2. Appellant shall continue to pay the mortgage, insurance, taxes and repairs on the parties' jointly owned residence.

3. Appellant shall make the support payments of $450.00 per week to the DOMESTIC RELATIONS OFFICE OF CARBON COUNTY, with credit to be given for all direct support payments to appellee upon proof of payment to the Carbon County Domestic Relations Office.

4. Appellant shall pay $1.00 per month service cost commencing January, 1979.

---

**5.** Husband must also pay approximately $100.00 per month for taxes and insurance for the joint residence.